BARNES, J.,
for the Court.
¶ 1. Jane Doe and her sister, Jill Doe, both minors at the time this suit was originally filed, by and through their natural mother, Mary Brown, and step-father, Jim Brown,[1] appeal the judgment of the Circuit Court of Pontotoc County which found in favor of the defendant Pontotoc County School District. Finding no error, we affirm the ruling of the circuit court.
SUMMARY OF FACTS AND PROCEDURAL HISTORY
¶ 2. Jane Doe and her twin sister Jill enrolled as students in North Pontotoc High School (“North Pontotoc”) in the spring of the 2001-2002 school year. Both girls were fourteen years old and in the ninth grade. One of the girls’ teachers was Jeremy Wise, who taught them math and was also the high school baseball coach.[2] Sometime in the spring of 2002, Wise began an association with Jane that ultimately went far beyond the bounds of appropriate student-teacher relations. At the time of this case, Wise had a two-year-old daughter, and his wife, also a teacher, was pregnant with their second child.
¶ 3. Wise’s relationship with Jane and her family began innocently enough a few years earlier. Wise, just out of college, was licensed as a teacher in 1998 and obtained his initial teaching position as a sixth grade math teacher at North Ponto-toc Elementary School where he first taught Jane and Jill. Wise developed a mentoring relationship with the girls during this time period, which was approved of and encouraged by their mother, as she was divorced from the girls’ father and appreciated the support. Additionally, the twins had a strained relationship with their step-father, so Wise also assumed a fatherly role towards the girls. This relationship was endorsed by the twins’ natural father, who lived in Memphis at the time.
¶ 4. It is important to note that prior to this case, Wise had no prior criminal record, no history of sexually harassing students, and was in fact highly regarded by the Pontotoc County school superintendent, Jerry Horton, and the North Ponto-toc school principal, Steven Carr, who had both known Wise as a student in the Pon-totoc public school system. Both individuals thought Wise would make a fine teacher. Further, in his short educational career, Wise had a reputation as a capable and caring teacher until this incident. Additionally, Wise received the standard sexual harassment training through the school district’s teacher orientation at the beginning of the school year in 2001.
¶ 5. Jane’s mother testified it was not until the girls reached the eighth grade that she noticed in retrospect Wise began paying more attention to Jane. Because of the mentoring role he had developed with the girls, it was not unusual for Wise to *414 call Jane at her home, take her to church, or attend dance recitals and other extracurricular activities on occasion. When Jane transferred to North Pontotoc early in 2002, Wise became Jane’s math teacher. Wise also selected Jane to be a member of the “Diamond Girls,” who were bat girls for the varsity baseball team. Indeed, Jane’s mother testified repeatedly that she had complete trust in Wise, and Wise gave her no indication that she should feel otherwise, or that his relationship with Jane was anything more than “fatherly” attention.
¶ 6. In the spring of 2002, Jane and Wise’s relationship became inappropriate. Except for five undisputed instances of physical contact, them relations consisted of private exchanges through e-mails, phone calls and handwritten notes. Because of the illicit nature of their relationship, Wise and Jane hid it. Jane testified Wise stressed the importance of keeping their relationship a secret; otherwise, he would lose his job, wife and daughter. Jane testified she therefore told no one, including her twin sister, with whom she was very close, about the increasing extent of her relationship with Wise.
¶ 7. Evidence and testimony showed any outward manifestations of their illicit relationship at the school were not publicly obvious or out of the ordinary. Jane would often attend Wise’s math class twice in one day, grading papers and helping other students during the second class which was a common activity by the students. Occasionally, Wise would walk Jane to her mother’s car at the end of the school day in the front of the school, in full view of the student body and faculty. Wise gave the twins a ride home from baseball games. As far as on the home front, Jane’s mother was aware of Wise’s incoming phone calls, but she testified there was always a legitimate school-related reason for them. Additionally, Wise went to Jane’s home on one occasion to tutor both girls in math, with their mother’s permission.
¶ 8. Evidence and testimony also showed Wise and Jane’s verbal communications were very discrete. E-mails were not written on school computers. Wise’s handwritten notes were slipped into Jane’s jacket at school when nobody was looking. There was a confrontation between Jane and Wise’s wife after a baseball game that apparently went unnoticed as well. Jane’s steady boyfriend at the time was also unaware of her relationship with Wise.
¶ 9. As the inappropriate relationship continued throughout the spring and summer of 2002, there were five instances of undisputed physical contact between Wise and Jane. The first instance was in the school field house. Jane testified that while she was hanging up baseball uniforms, Wise came into the field house, and alone behind closed doors, he grabbed Jane from behind and hugged her. The second instance was at a school basketball game that Wise and Jane attended together. Jane, who was babysitting Wise’s daughter, testified Wise sat behind her in the stands during the game and rubbed her shoulders periodically. The third instance was in May, when Jane accompanied Wise to a coaches’ meeting in Ripley. During the meeting, Jane waited in Wise’s truck. After the meeting on the way home, Wise stopped in the parking lot of his father’s business in Tupelo, and, in this secluded location, fondled Jane in the back of his truck. The fourth instance was in Wise’s home. Initially, Wise and Jane had planned on playing golf, but instead, Wise took her to his home where, alone, they lay on his bed together. The last instance of physical contact was when Wise kissed Jane in his truck outside of her home after giving her a ride home from a baseball *415 game. Wise and Jane deny sexual intercourse ever occurred between them, and both maintain they were clothed during all of their physical encounters. Additionally, with the exception of the supposed golf excursion, Jane was never alone with Wise without the permission of her mother.
¶ 10. The school principal, Carr, testified that he first heard about the possibility of Wise’s inappropriate relationship with Jane through an unsubstantiated rumor in the spring of 2002 from the school secretary. It is not known where the secretary received the information. The trial court found “that there was a rumor about indicating that one of the students and a coach were involved. There [was] no more specific information available.... ” Based on the rumor, Carr proceeded to carefully monitor the situation at the school, looking for any evidence to corroborate the rumor. Over a period of time, Carr did not observe any inappropriate behavior between Wise, and Jane on school grounds to give credence to the rumor. The second instance the possibility of an inappropriate student-teacher affair was brought to the principal’s attention was when a school board member, who had heard the same rumor from the school secretary, notified Superintendent Horton, who called Principal Carr. Carr then immediately confronted Wise and asked about the truthfulness of the rumor. Wise vehemently denied any wrongdoing. Carr proceeded to lecture Wise about how even a mere rumor can “ruin” a teacher’s career. Again, Wise maintained his innocence. At the time, Carr believed Wise, and in any. event, there was no substantiated evidence beyond this one rumor to prove otherwise. Carr maintained he did not receive any other complaints or rumors from anyone else regarding the situation, including other students, teachers, or any of Jane’s family members. Moreover, later in the semester Wise’s wife came to Carr and requested that the twins not be placed in any of her husband’s classes the following year because of the rumor, but she emphasized to Carr that she felt the rumor was unfounded.
¶ 11. The relationship was finally exposed in the middle of July when Jane’s half-sister found some discarded love letters from Wise to Jane in the trash. The half-sister told Jill, who brought the matter to the attention of Jane’s mother. Obtaining Jane’s e-mail password, Jane’s mother read the impassioned e-mails between her daughter and the teacher on the computer and was infuriated by Wise’s breach of trust. The mother claimed it was at this time she first realized Wise’s relationship with her daughter was not innocent. With copies of the e-mails in hand, Jane’s mother went to Wise’s house, confronted him in front of his wife and demanded his resignation from the high school. Wise complied and gave principal Carr his resignation on July 17, 2002, claiming it was over some “stupid e-mails.” Wise did not elaborate further. Carr and the school board accepted Wise’s resignation, still ignorant as to the extent of Wise’s relationship with Jane. Around this time, Jane’s mother also delivered copies of the e-mails to the school’s guidance counselor to give to Carr, who was out of town at the time.[3] Jane’s mother, upon the advice of a counselor, also moved her household and the twins to another school district so the sisters- could start the 2002-2003 school year at another location.
¶ 12. Jane’s family attempted to have criminal charges issued against Wise; however, the grand jury did not return an indictment. On February 11, 2003, Jane’s family filed this civil action against the Pontotoc County School District (“Dis *416 trict”) and Jeremy Wise. Claims against Wise were ultimately dismissed with prejudice, as a settlement agreement was reached with the plaintiffs. The claims remaining against the District included gross negligence in training and supervision of Wise, negligence, and negligence per se. Further, damages claimed included mental anguish, emotional distress, loss of enjoyment of life, and actual damages for counseling sessions and moving to another school district.
¶ 13. After a bench trial, the Circuit Court of Pontotoc County issued a judgment in favor of the Pontotoc County School District in August 2005, finding that the District “did not know nor did it have reason to know or should it have known that Jeremy Wise was engaged in an inappropriate relationship with [Jane Doe],” and was “not negligent in hiring, training and retaining Jeremy Wise as a teacher and in failing to report the incident to law enforcement when it finally became known.”[4] Jane, Jill, their natural mother and step-father timely appealed to this Court, raising the following issues-whether the trial court erred in finding: (1) the District did not have notice of the inappropriate relationship between Wise and Jane, (2) the District was not liable for breach of its statutory duty to report suspected sexual involvement of a teacher with a student, (3) the District’s actions were not in violation of its duty to Jane, and (4) the District properly trained and supervised Wise, and took proper action once the relationship was discovered. Finding no error, we affirm.
STANDARD OF REVIEW
¶ 14. Because this case was tried without a jury, factual determinations made by the trial judge are reviewed using the substantial evidence standard. Classic Coach, Inc. v. Johnson, 823 So.2d 517, 520(¶ 8) (Miss.2002). “A circuit judge sitting without a jury is accorded the same deference as a chancellor,” and the judge’s decision will not be overturned when supported by substantial evidence. Singley v. Smith, 844 So.2d 448, 451(¶ 9) (Miss.2003) (citing Maldonado v. Kelly, 768 So.2d 906, 908(¶ 4) (Miss.2000)). This Court may not reverse those findings unless the trial judge was manifestly wrong or clearly erroneous. Id. (citing Amerson v. State, 648 So.2d 58, 60 (Miss.1994)).
LEGAL ANALYSIS
1. Whether the trial court erred in finding the District did not have notice of an inappropriate relationship between Wise and Jane.
¶ 15. The Appellants argue that the District had adequate notice of the inappropriate relationship between Wise and Jane and thus are liable. Basing this contention on what they perceive to be a pattern of inappropriate sexual behavior by Wise, the Appellants claim this pattern should have alerted school officials to Wise’s subsequent abuse of Jane. Thus, the Appellants contend the trial court was in error in finding that the District, its officials and its employees did not know or should not have known that Wise was engaging in an inappropriate relationship with Jane.
¶ 16. It has long been established that an employer will be liable for negligent hiring or retention of his employ *417 ee when an employee injures a third party if the employer knew or should have known of the employee’s incompetence or unfitness.[5] Eagle Motor Lines v. Mitchell, 223 Miss. 398, 411-12, 78 So.2d 482, 486-87 (1955) (citing 57 C.J.S. Master and Servant § 559, 270-71). Relatedly, if an employer exercises due care in the hiring of its employees, that employer will not be liable for the injuries of a third party unless that party can prove the employer knew or should have known of the incompetence and unfitness of the employee. Jones v. Toy, 476 So.2d 30, 31 (Miss.1985). A plaintiff must prove the defendant had either actual or constructive knowledge of an employee’s incompetence or unfitness before the employer will become liable for the negligent hiring or retention of an employee who injures a third party. Eagle Motor, 78 So.2d at 487 (citation omitted). , “Actual notice” is defined as “notice expressly and actually given ....” while “constructive notice” is defined as “information or knowledge of a fact imputed by law to a person (although he may not actually have it), because he could have discovered the fact by proper diligence, and his situation was such as to cast upon him the duty of inquiring into it.” Black’s Law Dictionary 1062 (6th ed. 1990).
¶ 17. The Appellants base their notice argument on numerous Title IX[6] cases for gender discrimination in other state’s federal district courts, while failing to cite any Mississippi case law on the issue. Further, the Appellants state that a “complaint of harassment need not be undisputed or uncorroborated before it can he considered” as notice of harassment. (Emphasis added.) However, just because a complaint could be considered as notice of harassment does not mean that the fact finder abused his discretion in finding there was no notice of harassment. For instance, in Johnson .v. Galen Health Institutes, Inc., 267 F.Supp.2d 679, 688 (W.D.Ky.2003), that court found that “actual notice” of discrimination would be found when the official had actual knowledge of a substantial risk to students. Id. In Gordon v. Ottumwa Cmty. School Dist., 115 F.Supp.2d 1077, 1082 (S.D.Iowa 2000), that court stated that what constitutes sufficient notice is hard to define, but it should be obvious to school officials “that a school employee is a substantial risk to sexually abuse children.” Id. In both of these cases the courts found there was insufficient notice to support a Title IX claim. While these cases, cited for what constitutes notice from a Title IX perspective, may be appropriate for their general propositions, they do not compel us to overturn the finding of fact that there was no actual or constructive notice of the-relationship between Wise and Jane presented to these school officials.
¶ 18. The Appellants further cite Doe v. Taylor Indep. Sch. Dist., 15 F.3d 443 (5th Cir.1994) as analogous to the ease at bar. Taylor involved a section 1983 civil rights suit against the school district for a sexual affair between a teacher and student, holding school officials can be liable for supervisory failures that result in molestation of students if the officials show deliberate indifference towards the constitutional rights of the child. Id. at 445, 449. That court found notice can be given through a “pattern” of reports suggesting “misconduct of a sexual nature.” Id. at 456. The Appellants conclude that such a pattern of *418 reports existed in the case at bar, and Principal Carr had sufficient notice, through the evidence he had at the time, or should have known that an inappropriate sexual relationship was occurring between Wise and Jane. We disagree. After a thorough review of the record, we find insufficient evidence to reverse the trial court’s determination as to whether the District knew or should have known of Wise’s relationship with Jane or that the District could have foreseen this situation from Wise’s prior behavior or background.
¶ 19. From the evidence and testimony in the record, the trial court was correct in finding there was no “actual” notice to prove the District knew of the affair. The District had one uncorroborated rumor about a possible inappropriate relationship between Wise and Jane which was initiated by the school secretary and told to Carr and the school board member. There was no tangible evidence of the affair until the discarded notes and e-mails were found later that summer. School computers were not used for this correspondence nor were school telephones used for phone calls. All of the physical contact occurred when Wise and Jane were alone, except for the shoulder rubbing incident, which apparently went unnoticed by attendees of the basketball game. Evidently, nobody noticed the confrontation between Wise’s wife and Jane after a baseball game. Understandably, because of its illicit nature, Wise and Jane did not inform anyone of their relationship. Also understandably, Jane’s parents did not inform anyone in the District about the relationship because they were under the impression it was innocent. Appellants present no evidence that any employee or official at the school knew of the relationship either, except the isolated rumor, stated as such, by the school secretary. There were no complaints, formal or informal, lodged at the school or alleged by any individual. In retrospect, it is easier to see the signs of inappropriateness in Wise’s actions, but at the time they were occurring, there was insufficient proof to claim the District was negligent in not taking action.
¶ 20. Furthermore, there was insufficient constructive notice of the inappropriate relationship to claim the District “should have known” of the affair. Wise had no prior history of wrongdoing with the District and had a good reputation with the principal and the school superintendent, who both knew Wise personally from when he was a student. There was no indication that Wise would be an unfit or incompetent teacher either when they hired him or after he began teaching. Wise had a good reputation with the Pon-totoc community-at-large as well. There is nothing indicative about Wise’s past actions or actions at the time of his employment at the high school which would rise to the level of giving constructive notice to the District of Wise’s transgressions. Further, many of Wise and Jane’s relations were under the guise of innocence, such as his tutoring of the twins and her babysitting of Wise’s child. Importantly, Jane’s parents approved of and gave permission for most of the instances when the couple was together.
¶ 21. As for a “pattern” of inappropriate sexual behavior which would plainly point towards abuse as articulated in Taylor, we find none. See Taylor, 15 F.3d at 454. Again, it is easier to interpret Wise’s discreet favoritism of Jane in class and their relations on school property in retrospect as indicative of an inappropriate relationship, but we agree with the trial court that at the time Wise’s behavior would not have indicated the true illicit nature of their relationship. We find the record devoid of any pattern of sexual *419 misconduct by Wise that would be observed by any individual besides Jane. The principal and school officials were dealing with limited information that did not include knowledge of the extra tutoring, rides home from sporting events, church and softball excursions, phone calls, emails, notes, and the mentoring relationship Wise had with Jane.
¶22. Lastly, we find the District acted appropriately in retaining Wise until the e-mails were discovered and he resigned. Once the District learned of the extent of Wise’s misconduct, they did not exhibit indifference. The principal testified that if Wise had not resigned he would have been fired. Wise tendered his resignation letter to Principal Carr on July 17, 2002, the day after Jane’s mother confronted him at home regarding the e-mails. His resignation was accepted by the school board shortly thereafter. Jane’s mother filed criminal charges shortly after this date. The District acted appropriately with the information it had regarding the situation. Accordingly, the trial court did not err in finding no notice of the inappropriate relationship during the course of Wise’s employment. This issue is without merit.
2. Whether the trial court erred in finding the District liable for breach of its statutory duty to report suspected student-teacher sexual involvement.
¶23. Next, the Appellants argue that the trial court erred in finding the District not negligent in failing to report the situation to law enforcement officials under Mississippi Code Annotated section 97-5-24 (Rev.2006) once school officials became aware of the relationship. Claiming the trial court misinterpreted school personnel’s statutory duty, the Appellants further argue if Carr or Horton had contacted appropriate authorities, much of the abuse would not have occurred.
¶ 24. It should be noted that section 97-5-24 was never mentioned in the Appellant’s complaint, nor was a “duty to report” claim pled below. The first time section 97-5-24 was mentioned in the record was at trial, where Carr was examined about the potential duty to report fondling or sexual involvement of a student and a teacher to state officials. Similarly, the school superintendent, Horton, was examined about an alternative statute, section 43-21-353 (Supp.2006); this statute states, in summary, that any person, such as a “public or private school employee, or any other person having reasonable cause to suspect that a child is a neglected child or an abused child,” shall notify the Department of Human Services (“DHS”) as soon as possible. The trial judge, in his order, did not reference either statute by number, but found that “the District ... [was] not negligent ... in failing to report the incident to law enforcement when it finally became known.” The Appellants, in their brief to this Court, base their duty to report argument on 97-5-24, with no mention of 43-21-353. While we will address each statute in turn, especially in light of the concerns of the separate opinion, we are not at all convinced that the argument under section 43-21-353 was preserved for appeal, as it was not raised below, except during the examination of Horton at trial and was not raised at all by the Appellants in this Court. Furthermore, when trying to decide whether a specific or a more general statute should apply to a case, the longstanding and well-established rule of statutory construction dictates that the more specific statute will always control over the general one. Lenoir v. Madison County, 641 So.2d 1124, 1128-29 (Miss.1994) (citing Townsend v. Estate of Gilbert, 616 So.2d 333, 335 (Miss.1993)). *420 Here, we find section 97-5-24 specifically deals with the situation at bar, while section 43-21-353 could only apply in a much more general manner, if at all, and is thus not controlling.
¶ 25. Mississippi Code Annotated section 97-5-24 states in its entirety:
If any person eighteen (18) years or older who is employed by any public or private school district in this state is accused of fondling or having any type of sexual involvement with any child under the age of eighteen (18) years who is enrolled in such school, the principal of such school and the superintendent of such school district shall timely notify the district attorney with jurisdiction where the school is located of such accusation, provided that such accusation is reported to the principal and to the school superintendent and that there is a reasonable basis to believe that such accusation is true.
(Emphasis added.) Thus, the accusation of specific inappropriate behavior by an employee of a school district will only be reported to the district attorney if an accusation is first reported to the principal and superintendent and there is a “reasonable basis to believe” the accusation is true. Miss.Code Ann. § 97-5-24 (Rev.2006). We need not decide whether a private cause of action may be implied from this statute for failure to report a teacher’s sexual involvement with a student as the statute limits the duty to report to “accusations” which are reported to school authorities and which are reasonably believable.
¶ 26. Alternatively, section 43-21-353, which the separate opinion would have us apply to the case at bar, states:
Any attorney, physician, dentist, intern, resident, nurse, psychologist, social worker, family protection worker, family protection specialist, child caregiver, minister, law enforcement officer, public or private school employee or any other person having reasonable cause to suspect that a child is a neglected child or an abused child, shall cause an oral report to be made immediately by telephone or otherwise and followed as soon thereafter as possible by a report in writing to the Department of Human Services....
(Emphasis added). An “abused child” is defined by section 43-21-105(m) (Rev. 2004) as “a child whose parent, guardian or custodian or any person responsible for his care or support, whether legally obligated to do so or not, has caused or allowed to be caused upon said child sexual abuse, sexual exploitation, emotional abuse, mental injury, nonaccidental physical injury or other maltreatment.” (Emphasis added.) We find section 43-21-353 does not apply to the facts of our case, even if we were to ignore the rules of statutory construction and apply the more general statute.
¶ 27. First, while Wise is surely an employee of the school district for purposes of section 97-5-24, we fail to see how he could ever be considered a “person responsible” for Jane’s care or support, as specified by section 43-21-353. There is nothing present in the facts of this case to suggest that type of relationship between Wise and Jane. Regarding the type of conduct to be reported, there must be a reasonable cause to suspect “sexual abuse, sexual exploitation, emotional abuse, mental injury, nonaccidental physical injury or other maltreatment.” Miss.Code Ann. § 43-21-105(m) (Rev.2004). Here, while we do not dispute that Wise’s actions were improper, there is no evidence presented of the type of conduct applicable to this statute. Both Jane and Wise deny sexual intercourse, and there is no evidence to refute them. Improper fondling could cer *421 tainly cause emotional abuse to Jane, but we find it more appropriate to consider the improper conduct of fondling under the more specific statute, which specifies fondling by a teacher as reportable conduct, rather then the resultant emotional distress necessary for the general statute. Next, while the standard in section 43-21-353 is “reasonable grounds to suspect,” which admittedly is a lower standard than section 97-5-24, for this statute to apply, Carr would have had to have suspected, at the time the improper acts were occurring, that (1) Wise was responsible for Jane’s care; and (2) Wise was engaging in one of the improper conducts specified in section 43-21-353. We fail to see how this could be the case according to the evidence in the record.
¶ 28. In their brief, the Appellants cite to case law in Illinois regarding the standard of “reasonable belief’ set forth in an Illinois state statute regarding the reporting of child abuse, stating the standard to require reporting is objective, not subjective, in nature. See Jane Doe v. Dimovski, 336 Ill.App.3d 292, 270 Ill.Dec. 618, 783 N.E.2d 193, 198 (2003) (stating standard of “reasonable cause to believe” abuse is occurring is objective standard decided by reasonable person, not subjective belief decided by school officials). Thus, the Appellants argue, once an objective standard of reasonable belief is reached, the school officials are required to report the situation to the appropriate legal authorities. The Appellants also cite to T.M. v. Noblitt, 650 So.2d 1340 (Miss.1995) to further their argument of an objective standard of reasonable belief regarding section 97-5-24 and the duty to report sexual involvement of a student and teacher. We find the Appellants’ reliance on Noblitt to be misplaced. First, the Noblitt court interprets the statutory duty to report as subjective and objective in nature: “the statute first requires that person to make a determination of whether ‘reasonable cause’ exists as a foundation for an incident report. To that end, some investigation or other action on the official’s part must be undertaken. The actual determination of whether reasonable causes exists, however, is clearly a decision involving the exercise of personal judgment and discretion.” Id. at 1345. Second, Noblitt deals with the broader, more general statute described above — section 43-21-353 (Supp.1991). Even though Noblitt is interpreting a different duty to report than our case — reasonable cause to “suspect” versus “believe” — we conclude that the situations are sufficiently analogous for us to follow the Noblitt approach in the instant case, as section 97-5-24’s “believe” requirement is even more subjective and personal than the “suspect” requirement interpreted in Noblitt. We decline to follow the purely objective standard of Illinois’ Dimovski, which is contrary to Noblitt. Applying the “personal judgment and discretion” standard of Noblitt to section 97-5-24, we cannot find that the trial court erred in concluding that the school officials did not know of the relationship between Wise and Jane, and should not have known of the relationship.
¶ 29. First, there is no evidence in the record which proves the school’s officials were aware of the inappropriate relationship until after Wise resigned in July of 2002. An unsubstantiated rumor carries significantly less credibility than a formal accusation, and there were no formal accusations in the record. Second, there was no notice of fondling or sexual involvement between Wise and Jane in the rumor-only the possibility of an inappropriate relationship. Third, even if the District could have been found shirking its duty to report sexual involvement of a teacher with a student, by the time the District had sufficient knowledge to report the behavior, the *422 negligence claim would fail for lack of proximate cause. In July 2002, once the emails were discovered and the District had sufficient reasonable belief to suspect fondling or sexual involvement between Wise and Jane, the teacher had already resigned, the relationship had ended, and Jane’s mother would soon file criminal charges against Wise. Reporting to law enforcement officials at the end of July would not have alleviated any of Wise’s prior wrongdoings, or any alleged current or potential future damages claimed by Jane.
¶ 30. We maintain the trial court did not err in finding an unsubstantiated rumor insufficient to trigger reporting under either statute, whether it be a “reasonable ground to suspect” under section 43-21-353, or a “reasonable ground to believe” under section 97-5-24. Accordingly, under the circumstances of the case, the trial court found no such duty to report, and we cannot find that it erred. This issue is without merit.
3. Whether the District breached its duty to the student.
¶ 31. The Appellants contend the trial court did not adequately consider Jane’s constitutional rights to be free from sexual harassment and discrimination while attending school. The Appellants argue for a Title IX analysis based on sexual harassment regarding this issue and urge this Court to adopt that model. As stated supra, while Title IX standards may be generally analogous to this case’s analysis, the authority cited by the Appellants is insufficient to overturn the findings of fact by the trial court. Analyzed properly as a negligence claim, the standard would be that of ordinary care. Henderson v. Simpson Co. Pub. Sch. Dist., 847 So.2d 856, 857(¶ 3) (Miss.2003) (citation omitted). According to Mississippi law, in general, “[p]ublic schools have the responsibility to use ordinary care and to take reasonable steps to minimize foreseeable risks to students thereby providing a safe school environment.” Id. (quoting L.W. v. McComb Separate Mun. Sch. Dist., 754 So.2d 1136, 1141(¶ 24) (Miss.1999)). Ordinary care is a factual issue decided by the trial court. Id. at 858(¶ 6). In the first issue, we found the trial court was without error in holding that the District did not breach its duty of care in its retention and supervision of Wise. We do the same for this issue. The trial court found that the District was unaware of Wise’s inappropriate relationship with Jane until the end of July. Until that time, the District took appropriate action with the information it had-which was to question the teacher and monitor the situation. While it is unfortunate that the relationship was not discovered earlier, the District is not liable for failing to discover it. The District exhibited ordinary, reasonable care towards Jane based on the evidence it had. Accordingly, this issue is without merit.
4. Whether the District did not properly train, supervise, or take proper action after learning of the student-teacher relationship.
¶ 32. The Appellants argue that the District did not properly train or supervise Wise and took no action once it learned of the illicit relationship. We decline to address Wise’s supervision and failure of the District to take proper action, as these matters have already been discussed within the preceding issues.
¶ 33. Regarding Wise’s training, we find the trial court was correct in holding it was sufficient. The record refers to Wise’s training on sexual harassment throughout college, while teaching, and especially in the fall of 2001, all of which was prior to his affair with Jane. Evidence *423 shows Wise understood the school’s policy-on sexual harassment. The trial court’s finding that Wise was adequately trained on this matter and individually chose to violate the school’s expressed policy is supported by the record. Accordingly, this issue is without merit.
¶ 34. THE JUDGMENT OF THE CIRCUIT COURT OF PONTOTOC COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
KING, C.J., LEE, P.J., GRIFFIS, ISHEE AND ROBERTS, JJ., CONCUR.
MYERS, P.J., IRVING AND CHANDLER, JJ., CONCUR IN RESULT ONLY.
CARLTON, J., CONCURS IN RESULT ONLY WITH SEPARATE WRITTEN OPINION JOINED BY MYERS, P.J. AND CHANDLER, J.

. Because of the sensitive nature of this case and because minors were involved, we have changed the names of the Appellants to protect the minors' anonymity.

. Wise was initially a papy to this action but settled out of court.

. Carr first read Wise's incriminating e-mails on July 31, 2002.

. Because the municipal school district is considered a "political subdivision" under Mississippi Code Annotated section 11-46-1 (i) (Supp.2006), the judge heard the case without a jury pursuant to the Mississippi Torts Claim Act. See Miss.Code Ann. § 11-46-13(1) (Rev. 2002).

. The trial court’s order found the District was "not negligence in hiring, training and retaining of Jeremy Wise as a teacher”; however, Appellants in this case do not make a claim for negligent hiring against the District. Therefore, we will limit our discussion to whether the District was negligent in its training and retention of Wise.

. 20U.S.C. § 1-681.