984 So.2d 1073 (2008)
Candace BEACHAM, as Next Friend of Ashley Beacham, A Minor, Appellant
v.
CITY OF STARKVILLE SCHOOL SYSTEM, Appellee.
No. 2006-CA-01685-COA.
Court of Appeals of Mississippi.
June 17, 2008.
*1074 Rodney A. Ray, attorney for appellant.
Elizabeth Ross Hadley, Jackson, Wilton V. Byars, Oxford, attorneys for appellee.
Before KING, C.J., IRVING and CHANDLER, JJ.
KING, C.J., for the Court.
¶ 1. Ashley Beacham (Ashley), a minor child, by and through her next friend, Candace Beacham (Candace), filed suit against the City of Starkville School System (School System), alleging that the School System was negligent in protecting Ashley from harassment by fellow students and, therefore, liable for damages. After a two-day bench trial, the Circuit Court of Oktibbeha County found in favor of the School System and dismissed the suit with prejudice.
¶ 2. One issue is raised on appeal: whether the ruling by the circuit court was against the overwhelming weight of the evidence and clearly erroneous. Finding no error, we affirm.

FACTS AND PROCEDURAL HISTORY
¶ 3. On July 5, 2002, Ashley attended a pool party at a male student's home. The pool party was not a school-related event. Boys attending the party secretly videotaped Ashley changing into her swimsuit, and Ashley found out about the videotape two weeks later. Thereafter, Ashley, by and through her next friend, Candace, instituted juvenile court proceedings against the boys and filed a civil suit against the boys' parents.
¶ 4. One month after the incident, Ashley began her freshman year at Starkville High School. During this time, Candace, Ashley's mother, called Dr. King David Rush, then principal of Starkville High, and informed him of the videotape incident, the pending youth court proceedings, and a restraining order against the boys. Dr. Rush assured Candace that he would do what he could to make sure nothing happened between the students at school.
¶ 5. During trial, Candace alleged three specific incidents of harassment that occurred toward Ashley on school grounds. First, Candace testified that she contacted Dr. Rush and informed him that Ashley was harassed in the school cafeteria by Thomas Webb (Webb), a boy allegedly involved in the videotape incident. She named Rivers Rester (Rester), a fellow student, as a witness to the harassment. Ashley testified that Webb pinned her against a table in the cafeteria. However, Robert Elmore, chief investigator for the Oktibbeha County Sheriff's Department, testified that his investigation revealed that Webb accidently stepped on Ashley's foot. Dr. Rush investigated the matter, speaking to both Webb and Rester, and found no evidence of harassment.
¶ 6. Second, Keith Beacham, Ashley's father, testified that he contacted Dr. Rush and informed him that Webb and Ashley were in a class together. Dr. Rush testified that, since the accelerated biology class was only offered at that time, he allowed Webb to stay in the class, but he also alerted the teacher about the situation. *1075 To prevent interaction between the students, the teacher placed Webb and Ashley away from each other and never assigned them to work in groups together. As a result, there were never any incidents between Webb and Ashley in the classroom.
¶ 7. Third, Candace testified that she contacted Dr. Rush because Ashley, while she was a cheerleader for Starkville High, was harassed at school sporting events by the boys and their parents. She testified that the boys' parents would intimidate Ashley by mocking her, making faces, and pointing at her. She further alleged that the boys would sit directly behind Ashley and harass her at basketball games. Dr. Rush testified that he was never made aware of any such trouble at the sporting events. Also, Investigator Elmore interviewed another cheerleader who said she did not witness any harassment at the games.
¶ 8. The remainder of the Beachams' testimony regarding harassment focused on events that occurred off school grounds, such as harassing phone calls and rumors throughout the community, which are of no consequence to this matter.
¶ 9. Based on the foregoing facts, Candace filed suit on Ashley's behalf against the School System in the Okitbbeha County Circuit Court on February 9, 2005, alleging that the School System did not use ordinary care to protect Ashley from harassment by the boys and their parents during school, at school sporting events, and throughout the Starkville community. Therefore, the School System was liable for the mental anguish Ashley had suffered and the expenses the family had incurred due to the harassment. On September 5, 2006, the circuit court found the School System immune from suit pursuant to the Mississippi Tort Claims Act, Mississippi Code Annotated section 11-46-9(1)(b) (Rev.2002) because "the school district took reasonable steps to prevent any harassment at school, and those steps were successful." The circuit court further concluded that, even if the School System was not immune, the evidence did not show that the School System breached any duty to Ashley; nor did it prove that the School System was responsible for any alleged damages. Accordingly, the case was dismissed with prejudice. This appeal was filed on October 2, 2006.

STANDARD OF REVIEW
¶ 10. In a bench trial, the judge, as the trier of fact, solely determines the credibility of the witnesses. City of Jackson v. Lipsey, 834 So.2d 687, 691(¶ 14) (Miss.2003). A trial judge's findings of fact following a bench trial are subject to the same deference as a chancellor's findings of fact and will not be disturbed on appeal as long as those findings are supported by substantial evidence unless manifestly wrong, clearly erroneous, or an erroneous legal standard was applied. Mayor and Bd. of Alderman v. Homebuilders Ass'n of Miss., Inc., 932 So.2d 44, 48(¶ 6) (Miss.2006). Issues of law, however, are reviewed under a de novo standard of review. Lipsey, 834 So.2d at 691 (¶ 14).

ANALYSIS
¶ 11. On Ashley's behalf, Candace argues that the circuit court's ruling was clearly erroneous and manifestly wrong because the overwhelming weight of the evidence showed that the School System did not use ordinary care in protecting Ashley. Specifically, Candace argues that Dr. Rush's investigation was unreasonable because he did not talk to Ashley about the allegations. The School System, on the other hand, argues that the circuit court's judgment was proper and should be affirmed because Dr. Rush promptly investigated *1076 the matter and questioned the individuals specifically identified by Candace.
¶ 12. This action was brought under the Mississippi Tort Claims Act, which states in pertinent part:
(1) A governmental entity and its employees acting with the course and scope of their employment or duties shall not be liable for any claim:
. . . .
(b) Arising out of any act or omission of an employee of a governmental entity exercising ordinary care in reliance upon, or in the execution or performance of, or in the failure to execute or perform, a statute, ordinance or regulation, whether or not the statute, ordinance or regulation be valid[.]
Miss.Code Ann. § 11-46-9 (Rev.2002).
¶ 13. It is well established that "[s]chool districts have a duty to protect students from harm under the ordinary care standard." T.K. v. Simpson County Sch. Dist., 846 So.2d 312, 319(¶ 24) (Miss. Ct.App.2003) (citing L.W. v. McComb Separate Mun. Sch. Dist., 754 So.2d 1136, 1141(¶ 24) (Miss.1999)). Accordingly, the school district is immune from liability for injuries sustained by a student harmed at school so long as it exercises ordinary care to prevent foreseeable harm. Lang v. Bay St. Louis/Waveland Sch. Dist., 764 So.2d 1234, 1240(¶ 27) (Miss.1999). Immunity does not exist, however, if the school district fails to use ordinary care. L.W., 754 So.2d at 1142(¶ 25).
¶ 14. Whether the School System exercised ordinary care is a finding of fact for the trial judge to decide. See L.W., 754 So.2d at 1142(¶ 26). Considering all evidence introduced during the two-day bench trial, the circuit court found that the evidence did not support a finding that the School System breached any duty owed to Ashley. Instead, the circuit court determined that the School System "offered substantial proof that the school district met and exceeded any duty owed to the plaintiffs" and was, therefore, immune from liability.
¶ 15. We agree that there is substantial evidence to support the circuit court's finding that the School System exercised ordinary care and was, therefore, immune from liability. The School System is not responsible for any harassment Ashley suffered outside of school that was linked to the videotape incident. Furthermore, the School System cannot be held responsible simply for its young students' failure to respect their peers' boundaries; instead, the School System can only be held liable where it fails to exercise ordinary care to prevent foreseeable harm. T.K., 846 So.2d at 317(¶ 16).
¶ 16. Based on a review of the record, we find that there is no evidence to support Candace's allegation that the School System did not use ordinary care to protect Ashley. Conversely, the substantial weight of the evidence supports the circuit court's finding that the School System used ordinary care in investigating Ashley's claims of harassment at school when it was brought to the School System's attention. The School System took reasonable steps to investigate the allegations by questioning Webb and Rester about the cafeteria incident and by getting the teacher to monitor interactions between Webb and Ashley in class. The School System found no evidence of harassment, and several other witnesses verified Dr. Rush's observations. Granted, Dr. Rush did not specifically question Ashley regarding the incidents; however, he explained that he simply took her parents' word for the alleged incidents. This simply is not enough to determine that the School System did *1077 not exercise ordinary care; therefore, this issue is without merit.

CONCLUSION
¶ 17. As the ruling was supported by substantial evidence in the record, we find that the circuit court did not err by ruling in favor of Starkville School System. The City of Starkville School System exercised ordinary care and conducted a reasonable investigation into the alleged incidents of harassment. Therefore, the City of Starkville School System is immune from any liability pursuant to Mississippi Code Annotated section 11-46-9. Accordingly, we affirm the circuit court's judgment dismissing the lawsuit with prejudice.
¶ 18. THE JUDGMENT OF THE OKTIBBEHA COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES AND ROBERTS, JJ., CONCUR. CARLTON, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION, JOINED BY ISHEE, J.
CARLTON, J., Specially Concurring.
¶ 19. In light of the great deference accorded to a trial judge's findings of fact under the limited standard of review applicable in this case, I must concur with the result reached by the majority. However, I find that merely investigating reports of harassment and "monitoring" the situation is insufficient to meet the duty of ordinary care. Therefore, I write separately to express what I see as a developing trend of non-liability for a school district's willful blindness in dealing with the risks of abuse and/or harassment that exist within its hallways.
¶ 20. Once again we are presented with a situation where a school district's failure to respond in any meaningful way to known legitimate risks of harassment has allowed irreversible injury to occur to a child under its care and supervision. And again this Court has sanctioned the perfunctory actions of a school district in protecting (or not protecting) a child from a foreseeable risk of harm.
¶ 21. In Brown v. Pontotoc County Sch. Dist., 957 So.2d 410, 422(¶ 31) (Miss.Ct. App.2007), this Court recently addressed a similar situation and reached the same result: the school district met its duty of ordinary care by merely investigating reports of abuse and "monitoring" the situation. In Brown, the principal, after being apprised of a teacher's inappropriate sexual behavior toward a student, merely "question[ed] the teacher and monitor[ed] the situation." Id. In affirming the circuit court's judgment in favor of the school district, this Court stated, "While it is unfortunate that the relationship was not discovered earlier, the District is not liable for failing to discover it. The District exhibited ordinary, reasonable care towards [the student] based on the evidence it had." Id. Finding the school district's actions in Brown to be insufficient, I concurred in result only in order to express my view that the duty of ordinary care is not met by action that is no way meaningful. Id. at 424 (¶¶ 39-41) (Carlton, J., concurring in result only).
¶ 22. As in Brown, the majority in the instant case finds that the school district met the standard of ordinary care to prevent foreseeable harm by merely investigating the reports of abuse and directing a teacher to "monitor" the situation. However, I find that the school district's actions in the instant case were patently insufficient to meet the standard of ordinary care.
*1078 ¶ 23. The majority implicitly holds that the risk of harassment was not foreseeable. I disagree. The principal at the time, Dr. King David Rush, had been made aware of a prior incident of harassment between Ashley Beacham and Thomas Webb. With such knowledge, a subsequent incident of harassment became a foreseeable risk. Further, Dr. Rush had received reports of continued incidents of harassment. Therefore, I find that the risk was clearly foreseeable.
¶ 24. The majority effectively holds that even after a foreseeable incident of harassment has occurred, a school district nevertheless meets its duty of ordinary care to prevent the foreseeable risk by (1) conducting an investigation and (2) "monitoring" the situation. I find these actions virtually meaningless. Incidents of abuse and harassment do not ordinarily occur "in the light of day." Id. at 424(¶ 40) (Carlton, J., concurring in result only). Investigation occurs after the fact, and the effectiveness of "monitoring" extends only so far as the monitor's presence and ability to observe. Moreover, does a teacher not "monitor" his or her classroom, even without special instruction?
¶ 25. Beyond the futility in Dr. Rush's after-the-fact investigation, I find that his efforts were patently inadequate. Dr. Rush's investigation consisted merely of speaking with Webb and Rivers Rester, the girlfriend of one of Webb's cohorts. Naturally, both Webb and Rester denied any wrongdoing. As Dr. Rush himself testified, "I also spoke with [Webb], sort of alerting him that there had been an accusation of an incident, and of course Thomas denied anything having occurred." (Emphasis added). Further, Dr. Rush never even spoke with Ashley concerning the harassment. As counsel for the Beachams states in the appellant's brief, "[Dr. Rush's investigation] is tantamount to a prosecutor `investigating' a rape case and deciding nothing happened based on the Defendant and one of his friend's [sic] confirming the same without talking to the victim." As in Brown, this Court has again held sufficient an investigation that consisted of merely asking the alleged wrongdoer if he was guilty, accepting his denial, and "monitoring" the situation.
¶ 26. The decision reached by the Brown majority and the majority in the instant case effectively sanction the school district's willful blindness toward reports of harassment. In my view, these decisions have developed the following as a matter of practical reality: The more superficial the school district's investigation into the matter is, the less likely it is that a trial court (or this Court on appeal) will conclude that the school district has breached its duty of ordinary care to protect its students from foreseeable risks of harm. By perfunctorily reacting to reports of harassment, the school district is allowed to argue successfully that its conclusion that no abuse and/or harassment occurred was reasonable because the meaningless actions taken produced little evidence of harassment. Simply put, less is more; this is not a desirable result. The law on this issue (and its application by the courts) should foster a diligent investigation, not encourage a perfunctory or token investigation.
¶ 27. In my opinion, the relevant inquiry in cases of this type should not be whether the school district reasonably concluded that the assault had or had not occurred. Instead, the inquiry should be focused on a determination of whether the risk of harm was reasonably foreseeable and whether the school district's took reasonable action in the way of preventing and minimizing the risk. In making this determination, it must be borne in mind that a school district's action in response to *1079 a report of abuse and/or harassment is not a criminal investigation governed by a reasonable doubt standard. Stated differently, a determination of guilt beyond a reasonable doubt is not a prerequisite for a school official to take measures to discipline the alleged wrongdoer and/or to protect the complaining student.
¶ 28. The standard to which the school district must adhere is that of ordinary care to protect its students from foreseeable harm, i.e., ordinary care to provide a safe school environment. Where, as here, the school district has knowledge of a prior incident, and it has received continued complaints of harassment, the risk of a subsequent incident is foreseeable. I believe that "ordinary care" necessitates that meaningful action be taken to investigate the reported abuse and prevent the risk of further abuse. In my opinion, meaningful action is action that is reasonably likely to (1) produce a full and accurate account of the facts underlying the reported abuse and (2) prevent and/or minimize the risk of harm to the extent practical under the circumstances. An after-the-fact investigation accomplishes nothing in the way of prevention, and "monitoring" is vague and patently inadequate.
¶ 29. For the foregoing reasons, I find that the school district failed to meet the duty of ordinary care to provide a safe environment for Ashley by failing to take any meaningful action reasonably likely to prevent or minimize the foreseeable risk of harassment.
¶ 30. ISHEE, J., JOINS THIS OPINION.