14 So.3d 794 (2009)
A.B., a Minor, through her Mother, C.D., Appellant
v.
STONE COUNTY SCHOOL DISTRICT, Appellee.
No. 2008-CA-00478-COA.
Court of Appeals of Mississippi.
July 28, 2009.
*795 Paul Bryant Caston, Hattiesburg, attorney for appellant.
Walter William Dukes, Gulfport, attorney for appellee.
Before MYERS, P.J., GRIFFIS and ISHEE, JJ.
GRIFFIS, J., for the Court.
¶ 1. A.B., a minor, through her mother, C.D., filed suit against the Stone County School District for her injuries due to an alleged sexual assault. The circuit court found that the school district was immune from the majority of the allegations in the complaint. Where immunity did not apply, the circuit court held that A.B.'s injuries were not a foreseeable result of the school district's failure to exercise ordinary care. Thus, summary judgment was granted in favor of the school district. A.B. now appeals claiming that the circuit court improperly held that: (1) the school district's duties to provide a safe environment to A.B. did not require the exercise of ordinary care, and (2) the injuries to A.B. were not foreseeable. We find no error and affirm.

FACTS
¶ 2. A.B., the minor plaintiff in this case, was a fifteen-year-old student at Stone County High School during all times relevant to this matter. She had the habit of skipping some or all of her classes on an almost daily basis. She would ride the bus to school, then walk to a nearby apartment complex to spend the day with her older boyfriend or other friends. She would return to the school in the afternoon to ride the bus home. A.B.'s parents were unaware that she was missing school.
¶ 3. Raymond Collins was A.B.'s bus driver. On April 7, 2005, A.B. rode the bus to school as usual. Collins heard A.B. say that she did not want to go to school because she had not completed a project due that day. He suggested that A.B. stay on the bus and go with him to his house instead of going to school. A.B. agreed and rode the bus to the bus barn, where Collins parked in the back so no one would see A.B. move from the bus to his personal truck.
*796 ¶ 4. On the way to his house, Collins made sexual advances toward A.B., but she pushed him away. Collins then left A.B. at his home with his seventeen-year-old nephew while Collins went to work at another job. A.B. alleges that Collins's nephew raped her three separate times during the course of that morning and afternoon. Collins returned home that afternoon, and he instructed his nephew to drive A.B. back to the school where she later boarded Collins's bus and rode home.
¶ 5. A.B. filed suit under the Mississippi Tort Claims Act ("MTCA") claiming that the school district was negligent in its failure to use ordinary care by (1) allowing students to leave campus without authorization, (2) failing to adopt policies to notify parents of excessive unexcused absences, (3) failing to follow policies in place regarding the notification of parents when a child was inexplicably absent from school, (4) failing to notify A.B.'s parents of her excessive unexcused absences, (5) failing to enforce Mississippi Code Annotated section 37-9-69 (Rev.2007) which states that pupils are held "to strict account for disorderly conduct at school, on the way to and from school, and on the playgrounds, and during recess," (6) failing to provide adequate supervision of students arriving and departing by school bus, and (7) hiring Collins who took A.B. to his home and also allowed her to board his bus early before school was dismissed.
¶ 6. The school district filed a motion for summary judgment that was granted by the circuit court. The circuit court held that, under the MTCA, Mississippi Code Annotated sections 11-46-1 to -23 (Rev. 2002), the school district was immune from all allegations contained in the complaint except for the school district's alleged violation of the compulsory attendance law under Mississippi Code Annotated sections 37-9-69 and 37-13-91 (Rev.2007). However, even though there was no immunity for the violation of the compulsory attendance law, the circuit court found that the sexual assault of A.B. was not a foreseeable consequence of the failure of the school to report A.B.'s absences.

STANDARD OF REVIEW
¶ 7. The standard of review of a motion for summary judgment is well settled:
Our appellate standard for reviewing the grant or denial of summary judgment is the same standard as that of the trial court under Rule 56(c) of the Mississippi Rules of Civil Procedure. This Court employs a de novo standard of review of a lower court's grant or denial of a summary judgment and examines all the evidentiary matters before itadmissions in pleadings, answers to interrogatories, depositions, affidavits, etc. The evidence must be viewed in the light most favorable to the party against whom the motion has been made. If, in this view, there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law, summary judgment should forthwith be entered in his favor. Otherwise, the motion should be denied.
McMillan v. Rodriguez, 823 So.2d 1173, 1176-77(¶ 9) (Miss.2002) (citations omitted).

ANALYSIS

1. Whether the circuit court improperly held that the duty to provide a safe school environment is a discretionary act with no requirement that the school district exercise ordinary care.
¶ 8. Because the school district is considered a political subdivision, A.B.'s claims were brought under the MTCA. See Miss. Code Ann. § 11-46-1(i) (Supp.2008). The *797 MTCA provides the following exemptions from liability:
(1) A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:
(b) Arising out of any act or omission of an employee of a governmental entity exercising ordinary care in reliance upon, or in the execution or performance of, or in the failure to execute or perform, a statute, ordinance or regulation, whether or not the statute, ordinance or regulation be valid;
. . . .
(d) Based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused;
(e) Arising out of an injury caused by adopting or failing to adopt a statute, ordinance or regulation;....[1]
Miss.Code Ann. § 11-46-9(1)(b),(d), and (e) (Supp.2008) (emphasis and footnote added).
¶ 9. The circuit court determined that the allegations in the complaint, except the issue of the compulsory attendance laws, involved discretionary functions for which the school district was immune from suit under section 11-46-9(1)(d). The circuit court held that, had such duties been ministerial under section 11-46-9(1)(b), issues of fact would exist as to whether the school used ordinary care; therefore, summary judgment would be improper. However, because the circuit court found that the allegations addressed discretionary functions, summary judgment was granted based on the school district's immunity under section 11-46-9(1)(d).
¶ 10. A.B. does not dispute the circuit court's finding that each of her claims, except the claim under the compulsory attendance law, were discretionary acts on the part of the school district. Instead, she argues that summary judgment on the basis of immunity was improper because the school district, even though it was performing acts which are discretionary in nature, was required to use ordinary care in providing a safe school environment.
¶ 11. A.B. asserts that the circuit court's analysis misapplied the law in the area of school immunity. Specifically, she claims that the traditional ministerial-act-versus-discretionary-act analysis only applies to cases that do not involve schools. The school district responds that A.B.'s argument is a misinterpretation of precedent established by the supreme court in Collins v. Tallahatchie County, 876 So.2d 284 (Miss.2004).
¶ 12. In Collins, the supreme court addressed "an apparent misunderstanding in our case law." Id. at 289(¶ 14). The following clarification was given as to when the ordinary care standard applies:
Here, both parties cite (directly or parenthetically) Brewer v. Burdette, 768 So.2d 920, 923 (Miss.2000), for the erroneous proposition that one must use ordinary care in performing a discretionary function to retain immunity. Unfortunately, Brewer cited L.W. v. McComb Separate School District, 754 So.2d 1136 (Miss.1999), for the proposition that an ordinary care standard applies *798 to discretionary[-]function immunity. This Court recognized in L.W. that the school's conduct was of a discretionary nature. L.W., 754 So.2d at 1139-43 (emphasis added). However, this Court never found that the school officials were performing a discretionary function. Id. (emphasis added). Indeed, this Court actually found that the school officials in L.W. were performing a function required by statute and, therefore, properly analyzed the school's actions under subsection (b) (which addresses acts or omissions while performing statutory duties), rather than subsection (d) (which addresses discretionary duties). Id. Subsection (b) clearly carries an ordinary[-]care standard; subsection (d) does not. See id.

In Brewer, this Court misapplied the wording in L.W. by incorrectly applying the ordinary[-]care standard to discretionary duties. In Harris, this Court held: "When an official is required to use his own judgment or discretion in performing a duty, that duty is discretionary." [Harris v. McCray, 867 So.2d 188, 191(¶ 12) (Miss.2003).] Miss.Code Ann. § 11-46-9(1)(d) exempts governmental entities from liability of a discretionary function or duty "whether or not the discretion be abused[."] Therefore, [the] ordinary[-]care standard is not applicable to Miss.Code Ann. § 11-46-9(1)(d).
Id. at (¶¶ 16-17).
¶ 13. A.B. claims that the rule set forth in Collins applies only to "cases that do not involve the duty of school personnel to minimize the risk of personal injuries and to provide a safe school environment for students." While there seems to be some confusion in the area of school immunity, there is no language in Collins that would indicate that the holding was limited to immunity cases not involving schools. Collins merely clarifies that section 11-46-9(1)(b) requires the use of ordinary care when performing a statutory duty, and section 11-46-9(1)(d) has no requirement of ordinary care when the act is a discretionary function.
¶ 14. In support of her argument, A.B. cites to this Court's post-Collins holdings in Doe ex rel. Brown v. Pontotoc County School District, 957 So.2d 410, 422(¶ 31) (Miss.Ct.App.2007) and Beacham v. City of Starkville School System, 984 So.2d 1073, 1076(¶ 13) (Miss.Ct.App.2008), and claims that school districts must use ordinary care. While it is true that both Brown and Beacham applied the ordinary[-]care standard, neither case involved discretionary functions. Neither case referenced the supreme court's clarification in Collins; instead, both cases quote L.W., which involved a function required by statute.[2]
¶ 15. In L.W., following the assault of her son, J.A., by a fellow student, L.W. filed suit against the McComb Separate Municipal School District alleging that the school district "was negligent in failing to maintain a safe environment; in failing to properly monitor its grounds; in failing to properly supervise its students; in failing to have a route of safe departure for detention students; and for other acts of negligence." L.W., 754 So.2d at 1137(¶ 4). The circuit court found that the actions or inactions of the school district were discretionary and consequently protected by the *799 immunity provided for in the MTCA. Id. at (¶ 6).
¶ 16. The supreme court held that the allegations did involve discretionary acts. Id. at 1141(¶ 23). However, that finding did not fully resolve the matter of immunity. Id. at (¶ 24). The supreme court found that "public schools have the responsibility to use ordinary care and take reasonable steps to minimize risks to students thereby providing a safe school environment." Id. The supreme court applied this ordinary-care standard under section 11-46-9(1)(b) that requires ordinary care in the performance of a statutory duty. Id. at 1141-42(¶ 25). The statutory duty applied to public schools was Mississippi Code Annotated section 37-9-69, which states:
It shall be the duty of each superintendent, principal and teacher in the public schools of this state to enforce in the schools the courses of study prescribed by law or by the state board of education, to comply with the law in distribution and use of free textbooks, and to observe and enforce the statutes, rules and regulations prescribed for the operation of schools. Such superintendents, principals and teachers shall hold the pupils to strict account for disorderly conduct at school, on the way to and from school, on the playgrounds, and during recess.
Construing the MTCA with this statutory duty, the supreme court held: "The duty to provide a safe environment is one of ordinary care." L.W., 754 So.2d at 1142 n. 4. Further, "[t]he teachers and administrators here are then protected by sovereign immunity if and only if they used ordinary care in controlling and disciplining their students." Id. at 1142(¶ 26).
¶ 17. However, we find this case to be distinguishable from the circumstances in L.W. The student in L.W. was threatened during class. Id. at 1137(¶ 2). He was later threatened again during after-school detention before he was eventually assaulted by a fellow student. Id. at (¶ 3). In L.W., there was a clear issue as to whether the school was a safe environment for the students.
¶ 18. While A.B. makes several claims that the school district failed to provide a safe school environment, we must recognize that A.B. was not harmed or injured at school. Nor was she harmed or injured during the numerous times that she skipped school and walked off campus. Instead, she was injured when her bus driver, Collins, took her to his home. While A.B. has a claim that the school district negligently hired and supervised Collins, the supreme court has held that: "The duty to hire and supervise employees is necessarily and logically dependent upon judgment and discretion." T.M. v. Noblitt, 650 So.2d 1340, 1344 (Miss.1995). As such, this discretionary function does not require that the school district exercise ordinary care.
¶ 19. The circuit court concluded that:
Decisions with regard to the type and amount of supervision afforded to those boarding or disembarking the school bus, direct notification of parents of each absence of a student, means and measures for preventing a student from leaving campus, and such clearly require some element of judgment or choice on the part of the school personnel. No statute or regulation which would impose specific duties to be performed in a specific manner or time with regard to these allegations has been brought to this Court's attention and none has been found by the Court.

(Emphasis added). This is not a case where the school district's failure to discipline *800 a student at school resulted in an injury as was the issue in L.W. in which the supreme court applied section 37-9-69 regarding disorderly conduct of a student. Instead, A.B. willingly remained on the bus and was subsequently assaulted off-campus by a non-school employee. Because we find no violation of a statutory duty on the part of the school district, the ordinary-care standard in section 11-46-9(1)(b) does not apply. Therefore, the school district is afforded discretionary immunity on all of A.B.'s claims except the school district's clear violation of the compulsory attendance laws. Accordingly, this issue has no merit.

2. Whether the circuit court improperly held that A.B.'s injuries were not a foreseeable result of the school district's failure to exercise ordinary care.
¶ 20. The circuit court held that, even though the school district was not immune from the compulsory-attendance-law claim, A.B.'s injuries were not a foreseeable result of the school district's failure to use ordinary care in reporting A.B.'s absences. A.B. argues that it was foreseeable that allowing A.B. to roam unsupervised could result in harm to her.
¶ 21. A.B. has the burden of proving the elements of negligence, among which is the element of causation:
Proximate cause is a concept which is more accurately defined by reference to the distinct concepts of which it is comprised, which are: (1) cause in fact; and (2) foreseeability. Cause in fact means that the act or omission was a substantial factor in bringing about the injury, and without it the harm would not have occurred. Foreseeability means that a person of ordinary intelligence should have anticipated the dangers that his negligent act created for others.
Davis v. Christian Bhd. Homes of Jackson, Miss., Inc., 957 So.2d 390, 404(¶ 32) (Miss.Ct.App.2007) (internal citations and quotations omitted).
¶ 22. The circuit court held that the actions of the bus driver, who from all accounts was a model citizen prior to this incident, were not foreseeable consequences of the actions or inactions of the school district. Further, unlike in L.W. where the student had been threatened at school before the assault occurred, A.B.'s assault did not occur at the school and was not committed by another student over whom the school district had control.
¶ 23. As the supreme court has held: "a defendant is obligated solely to safeguard against reasonable probabilities and is not charged with foreseeing all occurrences, even though such occurrences are within the range of possibility." City of Jackson v. Estate of Stewart, 908 So.2d 703, 712(¶ 46) (Miss.2005) (quotation omitted). There is no evidence to suggest that the bus driver had ever acted in this manner before. In fact, the evidence showed him to be a model citizen. As the circuit court noted: "There is nothing further to suggest, even had the School District reported the absences as required and had the School Attendance Officer investigated those absences, that A.B. would not have still remained on the bus that morning." Her prior absences involved her leaving campus on foot. She had no pattern of remaining on the school bus.
¶ 24. We agree with the circuit court that: "The claim that something bad may happen to an unsupervised teen who is absent from school without her parents' knowledge is insufficient." A.B.'s assault by her bus driver's nephew, which occurred at the bus driver's home, was not a reasonably foreseeable result of the school district's failure to exercise ordinary care in reporting A.B.'s absences. Accordingly, *801 this issue is without merit, and the circuit court's order granting summary judgment in favor of the school district is affirmed.
¶ 25. THE JUDGMENT OF THE STONE COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, BARNES, ISHEE, ROBERTS AND MAXWELL, JJ., CONCUR. CARLTON, J., DISSENTS WITH SEPARATE WRITTEN OPINION.
CARLTON, J., Dissenting.
¶ 26. Because I would reverse the summary judgment and remand this case for further proceedings, I respectfully dissent. In order to make my position clear, I will address whether this case presents a breach of ministerial or discretionary duty, and whether the Mississippi Tort Claims Act (MTCA) bars liability in this case. I will also address the issues of proximate cause and foreseeability.

I. Whether the MTCA bars A.B.'s claims against the school district.
¶ 27. Under Mississippi Code Annotated section 11-46-9(1)(d) (Supp.2008), a governmental entity and its employees acting within the scope and course of their employment enjoy immunity from suit for any claim "[b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused." A duty is discretionary when the employee must use his own judgment or discretion in the performance of that duty. Harris ex rel. Harris v. McCray, 867 So.2d 188, 191(¶ 12) (Miss. 2003) (finding that actions of high school coaches were discretionary in nature in assessing injuries of football players and the need for medical attention). No immunity exists under the MTCA for the breach of a ministerial duty performed by the governmental employee. After reviewing Mississippi case law, statutory law, and administrative law, I find it obvious that the duty of the school district and the school bus driver to safely unload students from the bus upon arrival at the school is a ministerial duty, not a discretionary duty.[3] The duty of the school district and bus driver to disembark the children safely upon completion of the bus route and arrival at school requires no discretion on the part of the bus driver or the school district.
¶ 28. Mississippi has recognized the duties of school districts to protect and safeguard children entrusted to the school district's care while the student is a "user" of the bus. See Walley v. Coregis Ins. Co., 822 So.2d 902, 910(¶ 43) (Miss.2002) (quoting Johnson ex rel. Blocket v. U.S. Fid. & Guar. Ins. Co., 726 So.2d 167, 168(¶ 3) (Miss.1998)). The Walley court dealt with determining what activities fell within the definition of "use" of a school bus in addressing whether children injured while waiting for the school bus to arrive were covered under the school district's underinsured motorist insurance policy. Id. at 905(¶ 17), 910(¶ 43). Analyzing the facts of this case under the "use" analysis in Walley, I submit that when A.B. boarded the bus for school, she clearly satisfied the "use" requirement. A.B.'s use of the school bus for transportation to school placed her within the zone of protection created by the school district. See id. at 907(¶ 29).
*802 ¶ 29. The supreme court in Walley, after examining case law from other jurisdictions, determined that the use of a school bus includes not only the transportation of students to and from school, but it also includes unloading the school bus and assuring that the students reach a safe place, including when they cross a street. Id. at 909(¶ 38) (citing State Farm Mut. Auto. Ins. Co. v. Kentucky Sch. Bd. Ins. Trust, 851 F.Supp. 835, 838 (E.D.Ky.1994)).
¶ 30. The Walley court's recognition of the school district's duty to protect students who use the bus is further supported by Mississippi statutory law and administrative regulations issued by the Mississippi Department of Education. The general statutory scheme for transportation of students is set forth in Mississippi Code Annotated sections 37-41-1 to -57 (Rev.2007). See Miss.Code Ann. § 37-41-49 (making it a misdemeanor for a school bus driver to violate the safety regulation established by the board of education); Miss.Code Ann. § 37-41-25 (false reporting by school bus driver, or other employee of district, of the number of children being transported to and from school shall be a misdemeanor); Miss.Code Ann. § 37-151-107 (Rev.2007) (misdemeanor to misrepresent the average number of children in attendance); Miss. Code Ann. § 63-3-103(e) (Rev.2004) (defining school bus and requiring plain markings).
¶ 31. Mississippi Code Annotated section 37-41-1 provides that the State Board of Education is authorized to set standards for public school bus routes, school buses, school bus drivers, and for formulating courses of training for public school bus drivers. Further, Mississippi Code Annotated section 37-11-29 (Rev.2007) mandates that school employees must report any unlawful activity on educational property or during a school-related activity. The statute explains that school property includes school buses and the school campus.
¶ 32. Mississippi Code Annotated section 37-9-69 (Rev.2007) provides the following regarding school officials' handling of student behavior:
It shall be the duty of each superintendent, principal and teacher in the public schools of this state to enforce in the schools the courses of study prescribed by law or by the state board of education, to comply with the law in distribution and use of free textbooks, and to observe and enforce the statutes, rules and regulations prescribed for the operation of schools. Such superintendents, principals and teachers shall hold the pupils to strict account for disorderly conduct at school, on the way to and from school, on the playgrounds, and during recess.
In recognizing a school district's duty to provide a safe environment, this Court in Doe ex rel. Doe v. Wright Security Services, Inc., 950 So.2d 1076, 1086(¶ 43) (Miss.Ct.App.2007) reversed a grant of summary judgment in favor of a security service in a student's action involving her being sexually assaulted by another student. This Court found summary judgment inappropriate because the security service had contracted with the student's school district to provide security services; thus, it had obligated itself to a duty to protect the student. Id. at 1080(¶ 15). Further, this Court found that public schools had the statutory duty to minimize the risks to students and to provide a safe environment. Id.
¶ 33. Since the statutes cited above place the responsibility on the State Board of Education to set standards for school bus drivers, routes, and the like, we must review the Mississippi Department of Education's Board of Education Policy Manual. Section 7904 of the manual sets forth the *803 basic job description and responsibilities of public school bus drivers. Miss. Reg. XX-XXX-XXX § 7904 (Rev.1993) (Weil). The school bus drivers must abide by all laws and school board safety regulations. Id. Among other duties, the school bus drivers must also maintain routes and schedules as planned by the local school board. Id. at (6). The school bus drivers must also maintain discipline on the school bus and complete reports on discipline problems. Id. at (9), (11). Section 7906 of the policy manual states that "[t]he school bus driver is the most important element in the safe transportation of students."
¶ 34. Further examining the Department of Education Policy Manual, I turn to the Instructor's Guide for Training School Bus Drivers. Miss. Reg. XX-XXX-XXX. This administrative regulation explains that the purpose of the guide is to ensure that school-bus-driver training is consistent throughout the state. Id. at § 2. The manual explains that as a school bus driver employed by the Mississippi Department of Education, the school bus driver serves at the discretion of the State Superintendent of Education. Id. at § 3. Encompassed in the school bus drivers' responsibilities are the requirements to conduct a pre-trip and post-trip inspections and to complete all reports on bus discipline. Id. The regulations also specify that the driver must never permit a pupil to leave the bus without proper authorization before arriving at school or home, and the driver cannot drive the bus off the regular route or for unauthorized purposes. Id. at § 10. The regulations pertaining to educational accountability explain that school buses will transport students to their school of instruction prior to the beginning of classes.
¶ 35. A review of the statutory law, administrative regulations, and case law shows that a school district and its school bus driver have a duty to safely transport students to school. The duty to safely transport includes the safe loading and unloading of students. The school bus driver possesses no discretion to deviate from a route or to allow students to depart the bus at unauthorized locations. Id. Inherent in these minimum requirements of a school bus driver is a requirement to unload the students upon arriving at the school of instruction before classes begin.
¶ 36. Therefore, I would reverse and remand this case, as I find that a question of material fact exists as to the breach of the ministerial duty to unload students safely at the school upon arrival. The school district's answer to the complaint, as well as arguments in support of its motion for summary judgment, assert that the school bus driver exceeded the course and scope of his duties when he told A.B. to remain on the school bus instead of exiting at the high school and then hid her from school officials as he transferred her to his private vehicle from the school bus. Therefore, the school district does not dispute that A.B. remained on the bus after the bus's arrival at school, indicating a breach of the school bus driver's duty to safely unload students. The school district's answer and arguments, therefore, inherently admit that the school bus driver possessed no discretion to choose to keep a child on the bus upon arrival at his destination.
¶ 37. As stated, I find that this case presents a question of a breach of a ministerial duty, not a discretionary duty. Immunity exists for breaches of discretionary duties, even where the discretion is abused. Miss.Code Ann. § 11-46-9(1)(d). However, no such immunity exists for breaches of ministerial duties. This distinction is at the crux of the flaw in the school district's argument. The school district argues that immunity exists for misconduct *804 of its employees if that misconduct occurred in the course and scope of employment. The school district further argues that the governmental entity is not liable for any misconduct of its employees which occurred outside the course and scope of employment, such as a criminal offense. In this case, the school bus driver possessed a duty to safeguard the students who use the bus, including ensuring their safe disembarkment upon arrival at the destination. The school bus driver breached that ministerial duty by telling A.B. to remain on the bus while the driver was in the performance of his duties as a school bus driver.

II. Whether A.B.'s injury was foreseeable.
¶ 38. The supreme court in Glover ex rel. Glover v. Jackson State University, 968 So.2d 1267, 1276(¶ 29) (Miss.2007) succinctly stated that "[n]o citation of authority is necessary for the proposition that, to recover for injuries in a negligence claim, a plaintiff must prove that the defendant was negligent, and that such negligence was the proximate cause, or a proximate contributory cause, of the injuries." The supreme court also found that "[n]egligence is doing what a reasonable, prudent person would not do, or failing to do what a reasonable, prudent person would do, under substantially similar circumstances." Id. at 1277(¶ 29). The Glover court concluded its definition of negligence noting that its definition "obscures the complexity of the concept of proximate cause." Id. The court noted that "[a] defendant's negligence is the cause in fact of a plaintiff's damage where the fact[-]finder concludes that, but for the defendant's negligence, the injury would not have occurred." Id. at (¶ 32) (footnote omitted). Where harm is caused by more than one tortfeasor, the test is whether a particular tortfeasor's negligence "was a substantial factor in bringing about the resulting harm." Id. at n. 11 (citing Dan B. Dobbs, The Law of Torts, § 171 at 415 (2000)).
¶ 39. The Glover court then set out an instructive analysis of negligence, proximate cause, and foreseeability. The Glover court examined the prior precedent of City of Jackson v. Estate of Stewart ex. rel. Womack, 908 So.2d 703 (Miss.2005), where a bus driver assisted an elderly woman off the bus at a day-care center, then turned to help another passenger exit the bus. The elderly woman fell in the parking lot, hitting her head on the pavement, and then days later suffered a stroke. Womack, 908 So.2d at 706-07 (¶¶ 7-13). As a result of the stroke, the elderly woman suffered other medical complications. Id. at (¶¶ 11-13). The supreme court held in Womack that a stroke is not the type of injury one could anticipate resulting from a fall; thus, damages related to the stroke and its consequences would not be recoverable. Id. at 715(¶ 63).
¶ 40. The Glover court reiterated that "in satisfying the requirement of foreseeability, a plaintiff is not required to prove that the exact injury sustained by the plaintiff was foreseeable; rather, it is enough to show that the plaintiff's injuries and damages fall within a particular kind or class of injury or harm which reasonably could be expected to flow from the defendant's negligence." Glover, 968 So.2d at 1278(¶ 37).
¶ 41. The Glover case dealt with the rape of a female student attending a youth sports program at Jackson State University (JSU). A week prior to the assault, the program's bus driver had been informed that a girl was in the boys' restroom. Id. at 1271(¶ 6). The driver found Glover and another female student outside the boys' restroom, but they denied having been in the boys' restroom. Id. The driver conducted *805 no further investigation into the incident, even though the boy who had reported the incident continued to insist that the girls had been in the boys' restroom. Id. One boy later testified that he had been in the restroom on that occasion having sex with Glover. Id.
¶ 42. The next week, the bus driver picked up the children for the program and then dropped them off at the wrong building. Id. at (¶ 8). Upon learning that he had dropped the children off at the wrong location, the bus driver told the students to get back on the bus. Id. The driver did not notice that Glover and two male students failed to get back on the bus. Id. The driver left the three students behind, unattended and unsupervised. Id. Shortly thereafter, the two male students allegedly took Glover into a building and raped her. Id.
¶ 43. In Glover, the bus driver knew the male students who raped Glover had violent tendencies and that JSU had a history of crime on campus. Id. at (¶ 7). The Glover court noted that an employee's knowledge was imputed to the employer. Id. at 1276 n. 9. The court further stated that a fact-finder could find that JSU failed to provide adequate supervision and security on its premises. Id. at 1279(¶ 41). The court also found that a reasonable fact-finder could conclude that because of the inadequate security and supervision, JSU officials should have foreseen that some harm could come to Glover, including sexual activity and/or violence. Id. The Glover court noted that our law required only that the defendant foresee that some violent act or impermissible sexual act might occur. Id. The defendants did not have to foresee the particular violent or sexual act perpetrated against Glover. Id.
¶ 44. In Glover, the supreme court stated that when viewed in the light most favorable to Glover's case, the facts could lead a reasonable juror to find that Glover's injuries and damages were a foreseeable consequence of JSU's negligence. Id. at (¶ 42). Therefore, the supreme court found summary judgment inappropriate. Id. The court further explained that JSU's argument that the rape was an intervening superceding cause of Glover's damages had no merit. Id. The court stated that precedent clearly established that where the intervening cause of the injury was foreseeable, it cannot supercede the liability of the defendant. Id.
¶ 45. In this case, the school district makes much of A.B.'s behavior of habitually skipping school. The school district states that A.B., a ninth grader at the time, would ride her assigned bus, which was driven by the school bus driver at issue here. She would exit the bus at the appropriate time, and then she would leave campus without entering the school. The school district asserts that, on other occasions, A.B. would attend some of her morning classes, and then she would leave campus for the day.
¶ 46. The school district also asserts that A.B. would spend time with her boyfriend or a female friend while skipping school, and that she had, on multiple occasions, engaged in sexual intercourse with her boyfriend. However, the school district does not allege that A.B.'s other sexual encounters occurred on the school bus, while entering or exiting the school bus, or were in any way connected with her use of the school bus or the failure of the school bus driver to unload her at the school. I fail to see how A.B.'s delinquent conduct, unrelated to use of the school bus, absolves the school district's duty to provide a safe zone for children using the school bus and to protect the students until their use of the school bus is completed.
¶ 47. The arguments pertaining to the delinquent conduct and sexual activity of *806 A.B., on other occasions and unrelated to her use of the school bus, simply throw a smoke screen on a determination of whether the school district and its employee breached a ministerial duty to unload the students safely. The failure of the school district to report the delinquent and truant conduct, however, possibly violates the school's requirement to control unlawful activity on school property, including school buses, as set forth in Mississippi Code Annotated section 37-11-29. The fact remains, nonetheless, that the school district does not dispute that the school bus driver told A.B. to stay on the school bus upon arriving at the school. These past delinquent acts of A.B. could perhaps also be probative of the school district's failure to provide adequate truancy reporting and of the foreseeability that delinquent acts, sexual activity, or injury could occur if A.B. remained on the school bus in order to skip school.
¶ 48. The parties do not dispute that A.B. was a student and under the age of sixteen at all relevant times. She was not of legal age to consent to sexual activity. Any alleged past delinquent conduct or sexual activity with others did not provide the school bus driver with the discretion or authority to choose to not disembark her from the school bus upon arrival at the school. See M.R.E. 404(a) (generally, "[e]vidence of a person's character or a trait of his character is not admissible for the purpose of showing that a person acted in conformity therewith on a particular occasion"); see also Wilkins v. State, 603 So.2d 309, 323 (Miss.1992) (In addressing proper impeachment evidence, the court found that a witness cannot be cross-examined regarding his involvement with crimes for which he had not been convicted or impeached with questions regarding crimes for which he has been charged.) School districts possess a duty to protect all students using the school bus and such safe use includes loading, unloading, and arrival at school. See Walley, 822 So.2d at 909(¶ 38) (quoting Kentucky Sch. Bd. Ins. Trust, 851 F.Supp. at 838); see also Miss. Code Ann. § 37-9-69.
NOTES
[1] We note that the circuit court held that A.B.'s claims that the school district failed to adopt policies or rules related to the loading of buses and the reporting of absences were clearly precluded by section 11-46-9(1)(e). As A.B. makes no argument addressing this finding, we must conclude that she waives any assignment of error regarding subsection (e) of section 11-46-9(1).
[2] "[T]he school officials in L.W. were performing a function required by statute and, therefore, [the supreme court] properly analyzed the school's actions under subsection (b) (which addresses acts or omissions while performing statutory duties), rather than subsection (d) (which addresses discretionary duties)." Collins, 876 So.2d at 289(¶ 16) (citing L.W., 754 So.2d at 1139-43 (¶¶ 14-29)).
[3] See Miss. Dep't of Human Servs. v. S.W., 974 So.2d 253, 258-59(¶ 11) (Miss.Ct.App.2007) (explaining distinction between ministerial and discretionary duties).