# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2022-SA-01234-SCT

*FELISSA JONES AND J.J., A MINOR BY AND
THROUGH HIS MOTHER AND NEXT FRIEND
FELISSA JONES*

*v.*

*MISSISSIPPI DEPARTMENT OF CHILD
PROTECTION SERVICES*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/14/2022 |
| TRIAL JUDGE: | HON. J. DEWAYNE THOMAS |
| TRIAL COURT ATTORNEYS: | JEREMY DAVID EISLER |
| | DOUGLAS T. MIRACLE |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANTS: | JEREMY DAVID EISLER |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: DOUGLAS T. MIRACLE |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED - 06/13/2024 |
| MOTION FOR REHEARING FILED: | |

**EN BANC.**

**MAXWELL, JUSTICE, FOR THE COURT:**

¶1. Though Felissa Jones raises a multitude of appellate issues, all her claims can be summed up in one question—does Mississippi law require the Mississippi Department of Child Protection Services (MDCPS) to investigate a report that a child has suffered abuse at school by school staff? Based on the plain language of the relevant youth court statutes—namely, Mississippi Code Section 43-21-353 (Rev. 2023)—the clear answer is no.

Reports of abuse in out-of-home settings do not fall under the youth court's limited jurisdiction. So MDCPS's policy not to treat reports of abuse at school as youth court matters but instead screen out the report to local law enforcement complies with and furthers legislative policy.

¶2. For this reason, the chancellor did not err by granting MDCPS a judgment on the pleadings in Felissa Jones's injunctive and declaratory action aimed at MDCPS's policy not to investigate allegations of abuse at schools. Thus we affirm.

## Background Facts & Procedural History

¶3. Jones's son is an elementary school student in the Lincoln County School District. In 2019, Jones reported to MDCPS that her son had suffered abuse and neglect by staff at his school. MDCPS responded that it does not investigate reports of abuse at school. In July 2020, Jones sued MDCPS. She sought declaratory and injunctive relief related to MDCPS's intake policy that the agency does not investigate allegations of abuse in out-of-home settings such as schools.

¶4. After Jones filed suit, MDCPS amended its intake policy on screening reports of maltreatment in out-of-home settings.[1] So Jones amended her complaint to also challenge

---

[1] This expanded policy defines "out-of-home settings" and directs that, when MDCPS receives a report of abuse and neglect in an out-of-home setting, the intake worker must ascertain if "the alleged perpetrator is the parent, guardian, custodian, person responsible for the child's care or support, or an adult relative or household member with access to the child." Under the policy, "stepparents, foster parents, relatives, babysitters, residential facility staff, or any other individuals who stand in a role similar to that of a child's parent in providing for the child's needs" fall into this category of perpetrators, but "teachers, daycare workers, security guards at juvenile detention centers, or church employees/volunteers" do not. If the intake worker determines the alleged perpetrator falls into the parent/guardian/custodian category, the policy directs that the report be screened in

2

the updated policy. The crux of Jones's argument was that Mississippi law—namely, Mississippi Code Section 43-21-353(8) (Rev. 2023)[2]—mandated that MDCPS investigate the report that her son had been abused and neglected at school. Jones alleged MDCPS, by refusing to investigate her report, deprived her son of the youth court's jurisdiction. Her amended complaint sought declaratory relief that both the former policy and current policy violate the law. It also sought injunctive relief ordering MDCPS to change its intake policy and to investigate any child abuse complaints that were screened out due to MDCPS's allegedly unlawful policies.

¶5.     Jones moved for a judgment in her favor on the pleadings, which the chancellor denied. After this Court denied her petition for permission to file an interlocutory appeal, Jones requested that the chancellor reconsider the denial of her motion for a judgment on the pleadings. While that motion was pending, MDCPS moved for a judgment on the pleadings.

_____

and assigned to the county CPS for investigation. But if the alleged perpetrator "is not the parent, guardian, custodian, person responsible for the child's care or support, or an adult relative or household member with access to the child, the report will be screened out." The policy also directs the intake supervisor to "immediately notify the law enforcement agency in whose jurisdiction the act occurred by phone and email regardless of whether the report is screened in for investigation by MDCPS."

    The full policy can be found on the MDCPS website:

https://www.mdcps.ms.gov/sites/default/files/about-us/policies-%26-procedures/Intake-Policy-Revised-Eff.-10.15.2020.-section-II.D.2.aScreening-Reports-of-Maltreatment-in-Out-of-Home-settings-CORRECTED-url-2.pdf (last visited June 12, 2024).

    [2] On July 1, 2019, while Jones's initial dispute with MDCPS was ongoing, the Legislature amended Section 43-21-353. S.B. 2840, Reg. Sess., 2019 Miss. Laws ch. 464, § 3; S.B. 2576, Reg. Sess., 2019 Miss. Laws ch. 473, § 4. These amendments, however, did not substantively alter the provisions at issue. *Compare* Miss. Code Ann. § 43-21-353(8) (Rev. 2023) *with* Miss. Code Ann. § 43-21-353(8) (Supp. 2016).

3

The chancellor denied Jones's motion for reconsideration, granted MDCPS's motion, and dismissed Jones's complaint.

¶6.     The chancellor ruled that Jones's request for declaratory relief related to MDCPS's former intake policy was moot because the policy was no longer in effect.  And the chancellor ruled that the current intake policy does not violate the relevant statutes.  Instead, it conforms to Section 43-21-353(8)'s statutory mandate to refer allegations of child abuse in out-of-home settings to local law enforcement.

¶7.     Jones appealed, challenging the denial of her motion for a judgment on the pleadings, the denial of her motion to reconsider, and the grant of MDCPS's motion for a judgment on the pleadings.

**Discussion**

¶8.     In her brief, Jones splits her argument into multiple issues.  But her appeal really only raises one question—does MDCPS have a statutory duty to investigate abuse allegations in out-of-home settings such as schools and daycare?  The answer hinges on statutory interpretation.  And statutory interpretation is a question of law this Court reviews de novo, without giving deference to the agency's interpretation.  ***HWCC-Tunica, Inc. v. Miss. Dep't of Revenue***, 296 So. 3d 668, 673 (Miss. 2020) (citing ***King v. Miss. Mil. Dep't***, 245 So. 3d 404, 407-08 (Miss. 2018)).  After de novo review, we agree with the chancellor's interpretation of the relevant youth court statutes.

¶9.     Youth court is a creation of statute.  Its jurisdiction is limited to what the Legislature determines it to be.  And based on the relevant youth court statutes, when it comes to

4

concerns of protecting children from abuse and neglect, it is clear that the Legislature has reserved the youth court's limited jurisdiction—and resources—for matters that arise out of children's familial and home environments, not schools. Stated differently, while a school's environment is extremely important to our children, who spend a significant amount of their time in the temporary care of teachers, school staff, and administrators, the youth court statutes do not equate a child's school with a child's home. And the statutes do no treat teachers as surrogate parents or custodians. Instead, the Legislature has made a clear delineation between reports of abuse and neglect by a parent, custodian, or other similarly situated adult—which fall under the youth court's limited jurisdiction—and reports of abuse and neglect in out-of-home settings, such as schools—which do not.

¶10. Thus, MDCPS does not have a duty to investigate reports of abuse in out-of-home settings, such as schools, because children who are mistreated by school staff do not fall under the youth court's limited jurisdiction.

## I. Relevant Youth Court Statutes

¶11. Youth court jurisdiction is limited to "proceedings concerning a delinquent child, a child in need of supervision, a neglected child, an abused child[,] or a dependent child[.]" Miss. Code Ann. § 43-21-151(1) (Rev. 2023). And the youth court statutes carefully define each of these five categories of children. Miss. Code Ann. § 43-21-105(i), (k), (l), (m), (p) (Rev. 2023).

¶12. Section 43-21-353(1) mandates reporting to MDCPS when someone has reasonable

5

cause to suspect a child is "a neglected child[ or] an abused child."[3]  But under the youth

court statutes, *neglected child* and *abused child* have specific statutory meanings.  *A*

*neglected child* is a child "[w]hose *parent, guardian or custodian or any person responsible*

*for his care or support*, neglects or refuses, when able so to do, to provide for him proper and

necessary care or support, or education as required by law, or medical, surgical, or other care

necessary for his well-being[.]"  Miss. Code Ann. § 43-21-105(l) (Rev. 2023) (emphasis

added).  And an *abused child* is "a child whose *parent, guardian or custodian or any person*

*responsible for his care or support*, whether legally obligated to do so or not, has caused or

allowed to be caused, upon the child, sexual abuse, sexual exploitation, commercial sexual

exploitation, emotional abuse, mental injury, nonaccidental physical injury or other

maltreatment."[4]  Miss. Code Ann. § 43-21-105(m) (emphasis added).

¶13.   This means not every report MDCPS receives about neglect and abuse *of a* child is

a report of a neglected child or abused child for purposes of youth court jurisdiction.  Who

the reported perpetrator is in relation to the child matters. And it is critical to determining if

the report falls under the youth court's limited jurisdiction.  When MDCPS does receive a

---

[3] Section 43-21-353(1)'s mandate to report expressly applies to "[a]ny attorney, physician, dentist, intern, resident, nurse, psychologist, social worker, family protection worker, family protection specialist, child caregiver, minister, law enforcement officer, public or private school employee or any other person having reasonable cause to suspect that a child is a neglected child, an abused child, or a victim of commercial sexual exploitation or human trafficking . . . ."

[4] "'Abused child' also means a child who is or has been trafficked within the meaning of the Mississippi Human Trafficking Act by any person, without regard to the relationship of the person to the child."  Miss. Code Ann. § 43-21-105(m) (Rev. 2023).  But "physical discipline, including spanking, performed on a child by a parent, guardian or custodian in a reasonable manner shall not be deemed abuse under this section."  *Id.*

report of a neglected or abused child, MDCPS must make an immediate referral to the youth court intake unit. Miss. Code Ann. § 43-21-353(1). But "[i]f a report is made directly to [MDCPS] that a child has been abused or neglected . . . *in an out-of-home setting*, a referral shall be made immediately to the law enforcement agency in whose jurisdiction the abuse occurred . . . ." Miss. Code Ann. § 43-21-353(8) (emphasis added).

¶14. Section 43-21-353(8) also requires MDCPS to "investigate the out-of-home setting report of abuse or neglect to determine whether the child who is the subject of the report, or other children in the same environment, comes within the jurisdiction of the youth court[.]"

## II. Jones's Claim for Injunctive Relief

¶15. Jones latches onto the provision that MDCPS "shall investigate the out-of-home setting report of abuse or neglect." Miss. Code Ann. § 43-21-353(8). Jones insists MDCPS had a statutory duty to refer her report of abuse of her son by school staff to the youth court. And by screening her report out, Jones claims MDCPS deprived her son and other similarly situated children of youth court jurisdiction.

¶16. But the plain language of Section 43-21-353(8) belies her argument. When placed in its context, the provision Jones relies on makes clear that MDCPS's specific duty to investigate the out-of-home-setting report of abuse begins and ends with determining if the child falls under the jurisdiction of the youth court. Miss. Code Ann. § 43-21-353(8). "'Out-of-home' setting means the temporary supervision or care of children by the staff of licensed day care centers, *the staff of public, private and state schools*, the staff of juvenile detention facilities, the staff of unlicensed residential care facilities and group homes and the staff of,

7

or individuals representing, churches, civic or social organizations." Miss. Code Ann. § 43-21-105(x) (Rev. 2023) (emphasis added). Again, the statute directs MDCPS to "investigate the out-of-home setting report of abuse or neglect *to determine* whether the child who is the subject of the report, or other children in the same environment, *comes within the jurisdiction of the youth court*[.]" Miss. Code Ann. § 43-21-353(8) (emphasis added). So Jones's attempt to broaden this duty to investigate reports of abuse that do not fall under the youth court's jurisdiction is not supported by the statute's plain language.

¶17. The same is true for the dissent's view that reports of abuse and neglect in out-of-home settings such as schools fall under the youth court's jurisdiction. The statutes do not support the dissent's belief—in fact they undermine it. The entire reason for subsection (8) and its separate treatment of reports of abuse and neglect in out-of-home settings is that such reports *do not* automatically fall under the youth court's limited jurisdiction. This is why the statute directs MDCPS to immediately do two things—(1) refer the matter to local law enforcement *and* (2) also investigate *whether* the report comes within the jurisdiction of the youth court. If, as the dissent proposes, a report of abuse at an out-of-home setting like school automatically falls within youth court jurisdiction, there would certainly be no need or duty to *investigate* whether the report falls within youth court jurisdiction.

¶18. Alternatively, Jones asserts her son meets the statutory definition of an abused child or neglected child—and thus falls under the youth court's jurisdiction—because his alleged perpetrators either were his "custodians" or fell under the category of "any person responsible for [her son's] care or support." The dissent takes a similar view—that the terms

8

"custodian" or "person responsible for care or support" can apply to school teachers or staff. Curiously, the dissent *claims* it is not saying teachers are equivalent to parents or that they provide the same type of care and support as parents. But then the dissent goes on to argue that the type of care a school teacher provides can place it in the exact same position as a child's parent, guardian, or custodian for purposes of youth court jurisdiction.

¶19. We disagree. Just like terms *neglected child* and *abused child*, the phrase "any person responsible for care or support" has a specific statutory meaning. Miss. Code Ann. § 43-21-105(v) (Rev. 2023). "Any person responsible for care or support" specifically refers to "the person who is providing for the child at a given time." *Id.* This category of persons expressly includes "stepparents, foster parents, relatives, nonlicensed babysitters or other similar persons responsible for a child and staff of residential care facilities and group homes that are licensed by the Department of Human Services or the Department of Child Protection Services." *Id.*

¶20. School employees are not in the same category of relationship with school children as stepparents and foster parents. They do not provide for the school's children as that term is commonly understood. *See **Doe ex rel. Brown v. Pontotoc Cnty. Sch. Dist.***, 957 So. 2d 410, 420 (Miss. Ct. App. 2007) (holding school employee was not a "person responsible" for a student's care or support under Section 43-21-353). And they certainly are not "custodians" of the children who attend their schools.[5] *See* Miss. Code Ann. § 43-21-

---

[5] The dissent heads down a troubling and dangerous road by placing school teachers and personnel—including janitors—on equal footing with parents and step-parents. This is a serious infringement on parental rights to suggest school teachers and staff have custody or the same level of responsibility (and thus also authority) over a child as the child's parents

9

105(g) (Rev. 2023) (defining *custodian*) & Miss. Code Ann. § 43-21-105(q) (Rev. 2023) (defining *custody*).  Instead, they provide *temporary* supervision and care in an out-of-home setting.

¶21.    The statutory definition of "out-of-home setting" makes this clear.  Again, "'[o]ut-of-home' setting means the temporary supervision or care of children by the staff of licensed day care centers, *the staff of public, private and state schools*, the staff of juvenile detention facilities, the staff of unlicensed residential care facilities and group homes and the staff of, or individuals representing, churches, civic or social organizations."  Miss. Code Ann. § 43-21-105(x) (emphasis added).  Thus, in the youth court context, the Legislature has distinguished between the type of comprehensive care provided in a child's home and the type of temporary supervision provided by schools and churches—i.e., out-of-home settings.  So a report of abuse by school staff is a report of abuse in an out-of-home setting—a report that does not fall under the youth court's jurisdiction.

¶22.    This means Jones's report that her son had been mistreated at school, while understandably upsetting, did not trigger the youth court's jurisdiction.  So the chancellor did not err by dismissing Jones's injunctive claims aimed at ordering MDCPS to investigate her report and refer the matter to youth court.  Based on the clear statutory language, MDCPS had no such duty.

---

or custodial caretakers.  Furthermore, the dissent's view places an undue and unsupported burden on—often already overburdened—school teachers and staff to provide the same level of provision and support as a parent. It goes without saying that teachers and school staff bear significant responsibility over their students during the school day, but they are by no means on equal footing with parents. And nothing in the youth court statutes suggest as much.

10

## II. Jones's Declaratory Claims

¶23. Similarly, the chancellor did not err by dismissing Jones's declaratory claims challenging MDCPS's former and current intake policy.

¶24. First, as the chancellor noted, the claim Jones aimed at the former intake policy is moot. *Princeton Univ. v. Schmid*, 455 U.S. 100, 103, 102 S. Ct. 867, 70 L. Ed. 2d 855 (1982) (holding that a challenge to the validity of a regulation not longer in effect would lead only to an advisory opinion on an abstract question of law and is thus moot). That said, MDCPS's former policy "not [to] investigate reports regarding Out-of-Home Settings, such as a school or daycare" is clearly in line with Section 43-21-353(8). The policy also comported with Section 43-21-105(x), which expressly includes the temporary supervision of children by school staff as an out-of-home setting.

¶25. The same is true of MDCPS's current intake policy.[6] It too is in line with Section 43-21-353(8). This policy furthers the statutory directive to refer reports of out-of-home abuse to law enforcement. Miss. Code Ann. § 43-21-353(8). It also requires the MDCPS worker to determine if the child victim of abuse in an out-of-home setting falls under the jurisdiction of the youth court based on the reported perpetrator's being the child's parent, guardian, custodian, or person responsible for the child's care. In clarifying who does or does not fall into this category, the amended policy incorporates the statutory definition of *person responsible for care* and *out-of-home setting*. Miss. Code Ann. § 43-21-105(v), (x). Because the policy tracks the relevant statutes, there is no merit to Jones's claim for declaratory relief

---

[6] *See supra* n.1.

11

from the amended policy.

## Conclusion

¶26. For these reasons, the chancellor did not err by denying Jones's motion for a judgment in her favor on the pleadings, by denying her motion for reconsideration, and by granting MDCPS's motion for a judgment on the pleadings. We thus affirm.

¶27. **AFFIRMED.**

**COLEMAN, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR. RANDOLPH, C.J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. KITCHENS, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING, P.J.**

**KITCHENS, PRESIDING JUSTICE, DISSENTING:**

¶28. It is obvious that Mississippi law requires the Mississippi Department of Child Protection Services (MDCPS) to investigate reports of *all* abusive and/or neglectful conduct toward children. *See* Miss. Code Ann. § 43-21-353(1)-(8) (Rev. 2023). If we adopt the majority's analysis, this would amount to a judicial limitation on MDCPS's duty to investigate such reports. Specifically, MDCPS's duty to investigate reports of child abuse or neglect in out-of-home settings would become limited to claims of abusive and/or neglectful conduct toward children perpetrated only by parents, relatives, or other persons with a familial-type relationship with a particular child. I disagree with the majority's imposition of this limitation on MDCPS's duty to investigate reports of child abuse or neglect in out-of-home settings. The plain language of the statute and the statutory definitions for *out-of-home*, *custodian*, and *any person responsible for a child's care or support* establish that MDCPS has a duty to investigate claims of abusive or neglectful conduct by school staff members.

12

I would find that MDCPS's policies to the contrary, past and present, are violative of Mississippi Code Section 43-21-353(8) (Rev. 2023). Respectfully, I dissent and would reverse the judgment and remand the case to the trial court.

¶29. If a parent suspects that his or her child is being abused or neglected, that parent is obligated to report such suspicions to MDCPS pursuant to Mississippi Code Section 43-21-353(1), regardless of where the alleged misconduct is occurring. Miss. Code Ann. § 43-21-353(1) (Rev. 2023) ("[A]ny other person having reasonable cause to suspect that a child is a neglected child, an abused child, . . . shall cause an oral report to be made immediately . . . to [MDCPS][.]"). Code Section 43-21-353(8) pertains exclusively to reports of child abuse or neglect in out-of-home settings. According to the majority and to MDCPS's current policy, MDCPS does not have a duty to investigate claims of child abuse or neglect in out-of-home settings, unless such a report alleges that the suspected perpetrator has a familial relationship with the child or is an individual in a role similar to that of a parent, *i.e.*, stepparent or foster parent.[7] *See* Maj. Op. ¶¶ 13, 19-20, 24. Under the majority's analysis, if a parent reports that

---

[7]The majority cites a Court of Appeals decision, ***Doe ex rel. Brown v. Pontotoc County School District***, 957 So. 2d 410 (Miss. Ct. App. 2007), to support its position. But ***Brown*** is distinguishable from this case. The Court of Appeals, despite its hesitance about whether the argument, *i.e.*, whether Section 43-21-353 was applicable, had been properly preserved for appeal, determined that:

> [W]hile [the teacher] is surely an employee of the school district for purposes of section 97-5-24, we fail to see how he could ever be considered a "person responsible" for [the student's] care or support, as specified by section 43-21-353. There is nothing present in the facts of this case to suggest that type of relationship between [the teacher] and [the student]. . . .

> [W]hile the standard in section 43-21-353 is "reasonable grounds to suspect," which admittedly is a lower standard than section 97-5-24, for this statute to

13

his child suffered abusive and/or neglectful conduct while at school and the perpetrator was the child's teacher, MDCPS has no duty to investigate. But if the abusive and/or neglectful teacher is the child's mother, then MDCPS has a duty to investigate the report of out-of-home abuse and/or neglect under the majority's analysis. This produces an absurd interpretation of Section 43-21-353(8). The majority's interpretation of Section 43-21-353(8) is at odds with the plain language of the statute and is contrary to the Legislature's intent and ultimately destroys the purpose of the statute.

¶30.    The relevant statute is Code Section 43-21-353:

> (1)    Any attorney, physician, dentist, intern, resident, nurse, psychologist, social worker, family protection worker, family protection specialist, child caregiver, minister, law enforcement officer, public or private school employee or any other person having reasonable cause to suspect that a child is a neglected child, an abused child, or a victim of commercial sexual exploitation or human trafficking shall cause an oral report to be made immediately by telephone or otherwise and followed as soon thereafter as possible by a report in writing to the Department of Child Protection Services, and immediately a referral shall be made by the Department of Child Protection Services to the youth court intake unit, which unit shall promptly comply with Section 43-21-357. . . .
>
> . . . .
>
> (8)    If a report is made directly to the Department of Child Protection Services that a child has been *abused or neglected* or experienced commercial

apply, [the principal] would have had to have suspected, at the time the improper acts were occurring, that (1) [the teacher] was responsible for [the student's] care; and (2) [the teacher] was engaging in one of the improper conducts specified in section 43-21-353. We fail to see how this could be the case according to the evidence in the record.

*Id.* at 420-21. Thus, the Court of Appeals did not rule explicitly that a school employee could not provide for a child's care or support. Rather, in ***Brown***, the facts and the record did not support a finding of such a relationship between that teacher and that child.

14

sexual exploitation or human trafficking *in an out-of-home setting*, a referral shall be made immediately to the law enforcement agency in whose jurisdiction the abuse occurred and the department shall notify the district attorney's office and the Statewide Human Trafficking Coordinator within forty-eight (48) hours of such report. The Department of Child Protection Services *shall* investigate the out-of-home setting report of abuse or neglect to determine whether the child who is the subject of the report, or other children in the same environment, comes within the jurisdiction of the youth court *and shall report to the youth court the department's findings and recommendation as to whether the child who is the subject of the report or other children in the same environment require the protection of the youth court.*

Miss. Code Ann. § 43-21-353(1), (8) (emphasis added). In order to determine whether MDCPS was required to investigate the report of abuse/neglect in this case, this Court must consider the following:

1)    If a child suffers abusive or neglectful conduct from a staff member of a school, is that child considered an abused or neglected child, thereby bringing the child within the youth court's jurisdiction, and

2)    Does the statutory definition of an out-of-home setting support a finding that MDCPS is required to investigate reports of abusive or neglectful conduct committed by staff members of schools?

¶31.    I agree that with the majority that "not every report MDCPS receives about neglect and abuse *of a* child is a report of a neglected child or abused child for purposes of youth court jurisdiction." Maj. Op. ¶ 13. Likewise, reports of child abuse or neglect from out-of-home settings do not always signify that such reports and/or the child "automatically fall[] within [the] youth court jurisdiction" or that an investigation by MDCPS is required. Maj. Op. ¶ 17. There is no system of reporting claims of child abuse or neglect that automatically grants the child access to the youth court and its protections without a threshold determination of the credibility of the claims, *i.e.*, is there an abused or neglected child that

15

is in need of the youth court's protection?

¶32.    For a child to come within the jurisdiction of the youth court, he or she must be an abused or neglected child. Simply, to be an abused or neglected child, the abusive or neglectful conduct must have occurred at the hands of a parent, a guardian, a custodian, or any person responsible for [the child's] care or support. *See* Miss. Code Ann. § 43-21-105(v), (g) (Rev. 2023). In the present case, there are two statutory terms that can apply to members of a school's staff:  (1) *any person responsible for care or support*[8] and/or (2) a *custodian.*[9]

¶33.    Initially, MDCPS's policy was to the effect that "MDCPS does not investigate reports regarding Out-of-Home settings, such as a school or daycare, unless the child involved is in the custody of MDCPS, the alleged perpetrator is a foster parent, or ordered to do so by Youth Court." The agency then amended its policy. But the amended policy still neglected to obligate MDCPS to investigate reports of child abuse or neglect from a school. Rather, MDCPS's amended policy, despite its quotation of the statutory definition of *any person responsible for a child's care or support*, placed its own limitations on what constitutes a person responsible for a child's care or support. For example, the amended policy limited the term by stating expressly that teachers do not qualify as persons responsible for a child's care or support. Similar to MDCPS's amended policy, the majority finds that the same term is limited to certain persons because the statutory definition "expressly includes 'stepparents,

---

[8]The statutory definition of *any person responsible for care or support* is "the person who is providing for the child at a given time." Miss. Code Ann. § 43-21-105(v) (Rev. 2023)

[9]Similar to the definition of *any person responsible for care or support*, Mississippi Code Section 43-21-105(g) (Rev. 2023) defines *custodian* as "any person having the present care or custody of a child whether such person be a parent or otherwise."

16

foster parents, relatives, nonlicensed babysitters or other similar persons responsible for a child and staff of residential care facilities and group homes that are licensed by the Department of Human Services or [MDCPS]'" Maj. Op. ¶ 19 (quoting Miss. Code Ann. § 43-21-105(v) (Rev. 2023)).

¶34. While the majority is correct that the statute provides that the list "shall include" these persons and entities, the statute states also that the list "is not limited to" only these persons and entities. Miss. Code Ann. § 43-21-105(v). Thus, this is not a complete list, and the term does not expressly exclude teachers and other school staff members. To be considered a *custodian*, all that is necessary under the statute is for a person to have "present care or custody" of a child. Miss. Code Ann. § 43-21-105(g) (Rev. 2023). In the context of youth court law, the term *custody* is not limited to persons with familial ties and relationships.[10] Instead, *custody* is defined as the "physical possession of a child by *any* person." Miss. Code Ann. § 43-21-105(q) (Rev. 2023) (emphasis added). Thus, the phrase *present care or custody* means any person who is currently or actively taking care of the child or who has physical possession of the child. Neither of the above terms expressly limits their applicability to individuals with familial relationships or to those who stand in the shoes of a parent.

¶35. The majority asserts that the definition of *out-of-home* supports an interpretation of Section 43-21-353(8) that would find a report of abuse by school staff that occurs at an out-of-home setting does not fall within the jurisdiction of the youth court. *See* Maj. Op. ¶ 21.

---

[10]Typically, when the term *custody* is being discussed it is in the context of family law, such as disputes between parents and/or disputes between parent(s) and others who are related to the child, *e.g.*, grandparents. But the Legislature has crafted a different definition of custody within the laws of the youth court.

Yet the majority concedes that "a report of abuse by school staff is a report of abuse in an out-of-home setting[.]" Maj. Op. ¶ 21. The majority concedes also that school staff members provide temporary supervision and recognizes that the statutory definition of out-of-home is a setting in which there is "temporary supervision or care of children by . . . *the staff of public, private and state schools*[.]" Maj. Op. ¶¶ 16, 21 (quoting Miss. Code Ann. § 43-21-105(x) (Rev. 2023)); *see also* Maj. Op. ¶ 24 ("[MDCPS's original] policy also comported with Section 43-21-105(x), which expressly includes the temporary supervision of children by school staff as an out-of-home setting."). Despite these concessions, the majority still attempts to hold that reports of abuse or neglect by a member of a school's staff cannot and do not constitute reports that MDCPS is required to investigate and determine the validity, or lack thereof, of the claim. *See* Maj. Op. ¶ 21 ("So a report of abuse by school staff is a report of abuse in an out-of-home setting—a report that does not fall under the youth court's jurisdiction."). The majority supports this position by viewing temporary supervision as an outlier. *See* Maj. Op. ¶¶ 20-21. But the definition of an out-of-home setting exposes the majority's illusory assertion.

¶36.    *Out-of-home* is defined, in relevant part, as "the *temporary supervision* or care of children by the staff of licensed day care centers, *the staff of public, private and state schools*, the staff of juvenile detention facilities . . . ." Miss. Code Ann. § 43-21-105(x) (Rev. 2023) (emphasis added). The definition provides plainly that an out-of-home setting is to include schools because they are institutions in which temporary supervision or care of children is provided by members of a school's staff. Likewise, the definitions of *custodians* or *any other*

*persons responsible for a child's care or support* complement the definition of *out-of-home* because the terms require individuals who provide temporary supervision.[11] This Court has held that "[u]nder the doctrine of in pari materia . . . section[s] of the Code dealing with the same or similar subject matter must be read together in order to determine the legislature's intent." ***Lee v. State Farm Mut. Auto. Ins. Co.***, 355 So. 3d 229, 232 (Miss. 2023) (alterations in original) (internal quotation marks omitted) (quoting ***James v. State***, 731 So. 2d 1135, 1138 (Miss. 1999)); *see also* ***Miss. Dep't of Transp. v. Allred***, 928 So. 2d 152, 155 (Miss. 2006) ("The common maxim is that statutes *in pari materia* are to be construed together. When a statute is in pari materia with a later one, it is simply part of its context to be considered by the Court in deciding whether the meaning of a provision in the later statute is plain." (citing Rupert Cross, *Statutory Interpretation* 128, (1976))). Section 43-21-105 provides the statutory definitions needed to interpret Section 43-21-353(8). Under the relevant statutory definitions, the alleged perpetrator must be someone who has temporary supervision or has control of a child's care, and the perpetrator must belong to one of the listed groups of staffs, *e.g.*, staff of public schools. Therefore, MDCPS is required to investigate out-of-home reports because teachers and other school staff members fall within one of the categories of individuals whose conduct can constitute child abuse or neglect. If not, there never could be abuse or neglect of a child in an out-of-home setting by anyone who is not the child's relative or does not have some familial relationship to the child. Accordingly, I find that the statutory definition of an out-of-home setting supports an

---

[11] For five days a week, from early in the morning to mid-afternoon, generally, the staff of a school cares for and provides for the children entrusted to them.

19

interpretation that reports of child abuse or neglect by a member of a school's staff must be investigated by MDCPS.

¶37. The majority contends that an interpretation that requires MDCPS to investigate claims of child abuse or neglect at out-of-home settings would place an undue burden on the school's staff to "provide the same level of provision and support as a parent." Maj. Op. ¶ 20 n.5; *see also* Maj. Op. ¶ 18. I do not assert or imply that school staff members are equivalent to parents or that they are to provide the same type of care and support as parents. Rather, my reading of the plain language of the relevant statutes, including the statutory definitions, leads me to determine that MDCPS has a duty to investigate reports of child abuse or neglect in certain out-of-home facilities, *e.g.*, public schools, and to report its findings and recommendations to the youth court if appropriate. *See Lee*, 355 So. 3d at 232; *Allred*, 928 So. 2d at 155. The majority's assertion that the Legislature clearly limited the youth court's jurisdiction to matters that only "arise out of children's familial and home environments" defies the plain language of the statute. Maj. Op. ¶ 9; *see also* Maj. Op. ¶ 20 (MDCPS has no duty to investigate because members of a school staff "do not provide for the school's children as that term is commonly understood."). Had the Legislature intended Section 43-21-353(8) to be one-dimensional and to apply only to parents and to persons in familial-type relationships, it would not have included members of a school's staff in the definition[12] of out-of-home settings. Considering Section 43-21-353(8) as a whole, and taking into account the definitions in that statute, it becomes clear that MDCPS has a

---

[12]This definition includes the staff of public schools, the staff of private schools, and the staff of state schools. Miss. Code Ann. § 43-21-105(x).

20

statutory duty to investigate abuse-and-neglect reports by school staff members:

> If a report is made directly to [MDCPS] that a child has been abused or neglected . . . in an out-of-home setting, [which means the temporary supervision or care of children by . . . the staff of public, private and state schools,[13]] a referral shall be made immediately to the law enforcement agency . . . . [MDCPS] shall investigate the out-of-home setting[, which means the temporary supervision or care of children by . . . the staff of public, private and state schools,[14]] report of abuse or neglect to determine whether the child . . . comes within the jurisdiction of the youth court and shall report to the youth court the department's findings and recommendation as to whether the child . . . require[s] the protection of the youth court.

Miss. Code Ann. § 43-21-353(8).

¶38.    This Court has held that "[w]hether the statute is ambiguous or unambiguous, the 'ultimate goal of [the] Court in interpreting a statute is to discern and give effect to the legislative intent.'" *Lewis v. Hinds Cnty. Cir. Ct.*, 158 So. 3d 1117, 1120 (Miss. 2015) (second alteration in original) (quoting *Allred v. Yarborough*, 843 So. 2d 727, 729 (Miss. 2003)).[15] With the enactment of Section 43-21-353(8), the Legislature recognized that child

---

[13]Miss. Code Ann. § 43-21-105(x).

[14]Miss. Code Ann. § 43-21-105(x).

[15] This Court has held also that

"The Court looks to the whole of a statute to avoid adhering to one sentence or phrase of statute [. . .] in a way that skews its true meaning." [*Lawson v. Honeywell Int'l Inc.*, 75 So. 3d 1024, 1029 (Miss. 2011)] (citing *Manufab, Inc. v. Miss. State Tax Comm'n*, 808 So. 2d 947, 949 (Miss. 2002)). "This Court 'cannot . . . add to the plain meaning of the statute or presume that the legislature failed to state something other than what was plainly stated.'" *Id.* at 1030 (alteration in original) (quoting *His Way Homes, Inc. v. Miss. Gaming Comm'n*, 733 So. 2d 764, 769 (Miss. 1999)).

*Bd. of Supervisors of Jackson Cnty. v. Qualite Sports Lighting, LLC*, 337 So. 3d 1040, 1046 (Miss. 2022).

abuse or neglect can occur at a school by its inclusion of members of a school's staff in the definition of out-of-home settings. Thus, the Legislature intended clearly for MDCPS to have a duty to investigate and report its findings regarding claims of abuse or neglect that occur at school facilities by members of the schools's staff. *See Legislature of State v. Shipman*, 170 So. 3d 1211, 1216 (Miss. 2015) ("We must give statutes the construction that 'effectuate their purpose rather than . . . defeat them.'" (alteration in original) (quoting *Brady v. John Hancock Mut. Life Ins. Co.*, 342 So. 2d 295, 303 (Miss. 1977))). Also, the majority's assertion that MDCPS's duty to investigate is limited opposes the ultimate goal of Section 43-21-353: the protection of children from abusive and/or neglectful behavior in all cases, whether inside or outside the child's home. *See Howe v. Andereck*, 882 So. 2d 240, 243 (Miss. Ct. App. 2004) ("The enactment of this mandatory reporting legislation was for the single purpose of advancing the State's fundamental objective of eliminating child abuse and neglect."). Therefore, by limiting MDCPS's duty to investigate out-of-home reports only to those reports in which the alleged perpetrator has a familial relationship with the child, the majority would be imputing an absurd purpose to the Legislature's intent for Code Section 43-21-353(8). *See Drane v. State*, 493 So. 2d 294, 298 (Miss. 1986) ("Nor will this Court impute an unjust or absurd purpose to the legislature when any other reasonable construction can save it from such an imputation." (citing *Baker v. State*, 327 So. 2d 288, 291 (Miss. 1976))).

¶39. Regarding the majority's claim of whether such an interpretation places an undue burden on schools and their staffs is irrelevant, and such questions should be left for the

Legislature to decide and fix if necessary.[16] *See **State ex rel. Knox v. Bd. of Supervisors of Grenada Cnty.**,* 141 Miss. 701, 105 So. 541, 542 (1925) ("It is for the Legislature to decide what laws are necessary and proper for the government of the state and of the counties, and it is not for the court to decide whether the law is needed or whether it is wise."); *see also **Miss. Dep't of Corr. v. Roderick & Solange MacArthur Just. Ctr.**,* 220 So. 3d 929, 932 (Miss. 2017) ("[I]t is not for the courts to decide whether a law is needed and advisable in the general government of the people. That is solely a matter for the wisdom of the Legislature. But, it is our duty to construe the law and apply it to the case presented . . . ." (alterations in original) (quoting ***City of Belmont v. Miss. State Tax Comm'n***, 860 So. 2d 289, 307 (Miss. 2003))).

¶40.    Therefore, I find that the plain language of Section 43-21-353(8) and the statutory definitions given to the relevant terms, *e.g.*, *out-of-home*, *custodian*, *any person responsible for a child's care or support*, and *custody*, demonstrate clearly that MDCPS has a duty to investigate reports of child abuse or neglect alleged to have occurred in out-of-home settings that is not limited to persons with familial relationships with the child. *See* Miss. Code Ann. § 43-21-105(g), (q), (v), (x). Section 43-21-353(8) provides unequivocally that if a parent or other person reports suspected child abuse or neglect occurring in an out-of-home setting, MDCPS is required to investigate the validity of the claim, *i.e.*, whether the child in fact has been abused or neglected. If, during its investigation, MDCPS discovers that the child in fact has been abused or neglected at one of the statutorily defined out-of-home settings, then the

---

[16]The same is true if a burden is placed on MDCPS.

child comes within the youth court's authority, and MDCPS has a duty to the child to report its findings and recommendations to the youth court. Simply, in order for MDCPS to have a duty to investigate a report from an out-of-home setting and present its findings and recommendations to the youth court, the statute requires that: 1) there must be abusive or neglectful conduct toward a child (2) by either a parent, custodian, guardian, or any person responsible for the child's care or support, and (3) the reported abusive or neglectful conduct must have occurred at either a licensed day care center, a public/private/state school, a juvenile detention facility, a unlicensed residential care facility/group home, a church, or a civic or social organization, and (4) the reported abuser, *i.e.*, parent, custodian, guardian, or any person responsible for the child's care or support, must be a staff member of one of the listed facilities in which he or she provides temporary supervision or care of the abused or neglected child. *See* Miss. Code Ann. § 43-21-353(8); *see also* Miss. Code Ann. § 43-21-105(l), (m), (x).

¶41. Under the facts of this case, MDCPS was required statutorily to: 1) immediately contact local law enforcement; 2) investigate the report and determine whether the child "comes within the jurisdiction of the youth court"; and 3) if the child is within the jurisdiction of the youth court, then MDCPS shall report its findings and recommendations to that court. Miss. Code Ann. § 43-21-353(8). The statute uses the word *shall*, which this Court recognizes as mandatory language. ***In re Int. of D.D.B. v. Jackson Cnty. Youth Ct.***, 816 So. 2d 380, 382 (Miss. 2002) ("When used in a statute, the word 'shall' is mandatory and the word 'may' is discretionary." (citing ***Murphy v. State***, 253 Miss. 644, 178 So. 2d 692,

24

693 (1965))). Accordingly, the plain language of the statute creates a duty upon MDCPS to submit its findings and recommendation(s) to the youth court if its investigation determines the validity of a report of child abuse or neglect concerning an out-of-home setting.

¶42. The trial judge erred by granting MDCPS's judgment on the pleadings regarding Jones's request for injunctive and declaratory relief from MDCPS's policies. The policies that MDCPS has implemented fail to recognize that MDCPS has a duty to investigate out-of-home child abuse or neglect reports, even though the alleged perpetrator is not a parent or does not share a familial-type relationship with the child, and to report its findings and recommendation(s) to the youth court when appropriate. For these reasons, I would reverse the trial court's decision and remand the case to the trial court.

**KING, P.J., JOINS THIS OPINION.**